[Crim. No. 443. Third Appellate District.—July 16, 1918.]

## THE PEOPLE, Respondent, v. ROFFI ROSSI, Appellant.

CRIMINAL LAW—COMMISSION OF LEWD ACT UPON CHILD—VERDICT WARRANTED BY EVIDENCE.—In this prosecution for committing lewd and lascivious acts upon and with the body of a female child under the age of fourteen years, it is held that there was sufficient evidence to warrant a verdict that the defendant was guilty of the offense charged, and not of an attempt to commit rape.

ID.—ARGUMENT OF DISTRICT ATTORNEY—REFERENCE TO DEFENDANT AS "DEBAUCHER"—CONDUCT WITHOUT PREJUDICE.—In such a prosecution, reference by the district attorney in his argument to the case as one in which the "little girl" had been "debauched" by the defendant and also declaring that the defendant was a "debaucher" is not misconduct.

ID.—SENTENCE FIXING MAXIMUM TERM OF IMPRISONMENT—CRIME COMMITTED SUBSEQUENT TO INDETERMINATE SENTENCE LAW — UNAUTHORIZED SENTENCE.—The provisions of section 1168 of the Penal Code relating to indeterminate sentences are applicable to offenses committed subsequent to the enactment, and a sentence fixing the maximum term of imprisonment at twenty years for a violation of section 288 of such code is unwarranted.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

K. D. Robinson, and A. J. Harder, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by an information with and convicted by a jury in the superior court of Placer County of having committed lewd and lascivious acts upon and with the body of a female child under the age of fourteen years, and prosecutes these appeals from the judgment of conviction and the order denying his motion for a new trial.

The information is based on section 288 of the Penal Code, which reads: "Any person who shall willfully and lewdly

commit any lewd or lascivious act other than the acts constituting other crimes provided for in part two of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing; appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison not less than one year.''

The information charges the offense as follows: "The said Roffi Rossi on or about the seventeenth day of January, A. D. 1918, at the said county of Placer, in the said state of California, and before the filing of this information, did then and there willfully, unlawfully, feloniously, and lewdly, kiss, embrace, hug, and place his hands under the clothes and on and between the legs of one Lucille Orsolini, a female child under the age of fourteen years, with the intent of then and there arousing, appealing to, and gratifying the lust and passion and sexual desires of said child, all of which is contrary to the form, force, and effect,'' etc.

The point first made by the defendant is that if the defendant was shown by the evidence to have been guilty of any crime at all, it was that of an attempt to commit rape and not that defined by section 288 of the Penal Code. It is hence argued that the verdict cannot stand, because the acts proved come within those ''constituting other crimes provided for in part two of'' the Penal Code.

The point is without merit.

The child upon whom the alleged lascivious act was committed by the defendant is the daughter of a Mr. and Mrs. Orsolini, residents of Roseville, Placer County, and was, at the time of the commission of said act (the seventeenth day of January, 1918), a little more than nine years of age. The alleged crime was committed in the early morning of the day named at the home of the parents of the child in Roseville, after the father had gone to his work as a machinist in the railroad shops at Roseville and the mother had gone to the city of Sacramento to spend the day. A family by the name of Trott was occupying the house temporarily with the Orsolinis, and Trott was the only person left in the house with the child, Mrs. Trott having also gone to Sacramento that day. Trott was in bed and the little girl was in the kitchen engaged in preparing her own breakfast, when the defendant, for the

purpose, so he claimed, of delivering to Trott a key to a house in Roseville which the latter contemplated leasing for use by himself and family, made his appearance at the Orsolini home. Trott was aroused from a semi-sleeping condition by the noise of persons talking and "rustling around" in the adjoining room, and finally heard a child's voice say: "Don't do that —stop that—it hurts." Trott thereupon went to the bathroom door, from which he could see into the adjoining bedroom, and there he saw the defendant sitting upon the bed, but did not then see the child. Trott then returned to his own room and went back to bed and, within a few minutes thereafter, again heard similar noises to those which he had previously heard, and again he arose and went to the bathroom door, and, looking into the adjoining bedroom, saw the defendant sitting on the bed, holding the child between his legs, with the back part of her clothes up and his left hand under her clothes, while his right hand was around her body. Trott said that the defendant was moving himself "up and down" and holding the child on his lap. Trott, addressing the defendant, asked: "What in hell are you doing there?" whereupon the child broke away from the embraces of the defendant and ran into the adjacent room, exclaiming, as she ran out, "You dirty thing! I told you not to do that." When the child thus got away from the defendant Trott observed that the latter's private parts were out of his pantaloons and exposed.

There was no testimony that the defendant had sexual relations with the child. In fact, the girl testified that he did not insert his private parts into hers, but kissed and hugged her and had his hand under her dress and upon her person. She explained that when she said to the defendant, "Stop that; it hurts," etc., she had reference to his hugging her or pressing her body to his with such force as to make it painful to her.

It requires no argument to demonstrate that, under the facts as they are above briefly detailed, the defendant's acts were those denounced as a crime by section 288 of the Penal Code. It may be true that his intention was to have sexual relations with the child, but there is no evidence that he did have such relations with her, nor is there any proof that he attempted to insert his private parts into hers. But, as is obvious from the above statement of the testimony, there is ample evidence showing that he committed acts of lewdness upon her body—

acts which very naturally are calculated to excite the sexual passions of a child—and it is just such reprehensible conduct that section 288 was designed to punish. If it had been so clearly shown that the defendant attempted to insert his private parts into those of the child that no other conclusion would have been justified by the jury than that he attempted to commit the crime of rape upon the infant, then this court might be required to agree with appellant's counsel that the act committed was one of those "acts constituting other crimes provided for by part two of the" Penal Code, and, therefore, within the exception prescribed by section 288. But as in effect heretofore stated, there is evidence which warranted the verdict returned by the jury, and we are in consequence not at liberty to interfere with the result at which they arrived. (See *People* v. *Dabner,* 25 Cal. App. 630, [144 Pac. 975].)

The next and last point urged by the appellant for a reversal is predicated upon certain alleged misconduct of the district attorney during the course of his argument to the jury. That officer several times, in his address, referred to the case as one in which the "little girl" had been "debauched" by the defendant and also declared that the latter was a "debaucher." Counsel for the defendant objected to the use of those words by the district attorney, and the court thereupon suggested that the prosecutor omit their use in his argument, saying that if the words were employed by the district attorney in the sense that the defendant had actually had sexual intercourse with the child, the evidence did not justify their use. This statement by the court was itself sufficient to overcome the effect of any damage which the defendant might have otherwise suffered from the use of those words by the prosecutor. But we do not think the district attorney went far afield when he described the defendant as a "debaucher." The evidence, of which we have herein given a statement in substance, discloses the defendant's revolting and beastly acts upon the child, and even though he did not succeed in having actual sexual relations with her, it is fairly and reasonably to be assumed from the evidence that he was not above doing so, and might have carried his lechery that far but for the appearance of the witness, Trott, in the room at a timely moment. We are, however, not so sure that one

doing as the defendant was shown by the evidence to have done in this case may not with propriety be termed a "debaucher." His acts with the child were obviously such as to instill into her childish mind thoughts of the most degrading character and tendency and which are naturally calculated to lead an adolescent, presumably without fixed or correct notions of the principles of morality or a proper appreciation of the appalling significance of the loss of chastity by a female, to the commission of acts of unspeakable depravity. A man responsible for such a state of mind in a young female, who may be assumed, from her immature years, to be mentally irresponsible or without the ability to appreciate the terrible consequences to her of immoral conduct, is, although himself never having been criminally intimate with such child, no less a debaucher than one who has committed upon the child the sexual act itself. A district attorney, however, has the right in argument to build up a theory of his case as it is made by the evidence, and often in doing so he may give expression to thoughts which have been drawn from the realms of his imagination. If thus he keeps within the general character of the case as it is made by the proofs, then he remains within the sphere of legitimate argument. Of course, the prosecutor should not be permitted, in argument, to bring into the case facts vitally bearing upon the charge or the defendant's alleged connection therewith which have no foundation in the evidence, but where the evidence, as here, is such as clearly to warrant the belief that the defendant on trial committed the crime charged, then the prosecuting officer is authorized in argument to assume his guilt and to refer to and characterize him according to the nature or degree of turpitude of the crime of which he is accused. As was said in *People* v. *Glaze*, 139 Cal. 154, 160, [72 Pac. 965], in reply to an objection that the district attorney abused his rights in his argument to the jury, so it may with equal propriety be said here: "A defendant on trial for murder is not entitled as of right to be spoken of as if he were an innocent man in an argument by the officer who is endeavoring to show his guilt." Hence, it has been well said that, in his address to the jury, a prosecuting officer may descant upon the facts proved or admitted; arraign the conduct of the parties or the witnesses; "impugn, excuse, fortify, or condemn motives, as far as they are developed in the evidence; assail the credibility of wit-

nesses, when impeached by direct evidence, or by the incon-
sistency or incoherence of their testimony, their manner of
testifying, their appearance upon the stand, or by circum-
stances.   His illustrations may be as varied as the resources
of his genius; his argumentation as full and profound as his
learning can make it; and he may, if he will, give play to his
wit, or wings to his imagination.'' (*Tucker* v. *Heniker*, 41
N. H. 323.  See, also, *People* v. *Molina*, 126 Cal. 505, [59
Pac. 34]; *People* v. *McMahon*, 124 Cal. 436, [57 Pac. 224];
*People* v. *Soeder*, 150 Cal. 12, [87 Pac. 1016]; *People* v.
*Weber*, 149 Cal. 325, [86 Pac. 671]; *People* v. *Wheeler*, 65
Cal. 77, [2 Pac. 892]; *People* v. *Yee Foo*, 4 Cal. App. 730, 741,
742, [89 Pac. 450].)

No other points are made by the defendant, but the
attorney-general has called our attention to an error in the
judgment of sentence of which notice herein should be taken.
The crime of which the defendant was convicted was, as above
shown, committed in the month of January, 1918.   The legis-
lature of 1917 passed what is known as the ''Indeterminate
Sentence'' Act, which went into operation in August of said
year (see Stats. 1917, p. 665), said law being now section 1168
of the Penal Code.

Section 288 of the Penal Code, of the alleged violation of
whose provisions the defendant was convicted, fixes a mini-
mum penalty of not less than one year for the offense defined
therein, but does not prescribe or limit to a specific number of
years a maximum penalty therefor, so that the punishment
may in such a case run from not less than one year to life.
The court below, in sentencing the defendant and in its judg-
ment of sentence, fixed the maximum term of imprisonment
at twenty years.   Such a sentence in this case the court was
without authority to impose, since section 1168 of the Penal
Code was in operative effect at the time the crime of which
the defendant was convicted is alleged to have been com-
mitted.   (*People* v. *Gonzales*, 36 Cal. App. 782, [173 Pac.
407].)   In that case the defendants were convicted of the
crime of robbery committed after section 1168 of the Penal
Code became operative, and the court, in sentencing them,
fixed the maximum penalty in each case at a specific number
of years.   The punishment for the crime of robbery is exactly
the same as that prescribed for the offense of which the de-
fendant here stands convicted, viz., ''by imprisonment in the

state prison not less than one year.'' This court, in the case above named, among other things, said: ''We can see no merit in the claim that the law does not prescribe the maximum penalty for the crime of robbery. The maximum penalty 'prescribed by law' is the extreme penalty that the law authorizes to be imposed—that is, life imprisonment in the present case, as we have seen.'' The judgment was reversed, ''with direction to the lower court to pronounce judgment in accordance with said indeterminate sentence law of 1917.'' A petition for the hearing of the case by the supreme court after judgment here was denied, and the case is, therefore, controlling upon the question here.

The attorney-general, however, upon a point of practice in a matter of this kind, has called our attention to the case of the *People* v. *Mendosa,* 178 Cal. 509, [173 Pac. 998), in which the defendant, having been convicted of burglary of the second degree, committed after the indeterminate sentence law became operative, was sentenced by the court to imprisonment in the state prison for not less than one nor more than five years. The maximum punishment for burglary of the second degree is imprisonment for five years in the penitentiary, no minimum penalty being prescribed for said offense. The appellate court of the first district, while holding that the trial court erred in fixing the minimum penalty at one year, further properly held that the error so committed did not have the effect of nullifying the entire judgment, but instead of remanding the case for the purpose of having a proper sentence imposed modified the judgment of sentence by striking therefrom the portion thereof purporting to fix the period of imprisonment. That case was not called to our attention in the Gonzales case, nor does it in any way conflict with the conclusion reached in the latter case upon the vital question therein decided, but harmonizes therewith. We do not, however, perceive any reason for holding that the course adopted by the appellate court in the Mendosa case is not in such a situation perfectly proper, legally, and certainly it is the better or at least the less inconvenient and troublesome course to follow. We shall, therefore, adopt it in this case in preference to returning the case to the court below for the imposition of a proper sentence.

Accordingly, the portion of the judgment of sentence herein which attempts and purports to fix the maximum penalty at

twenty years is stricken from said judgment, and as so modified the judgment appealed from, as well as the order, likewise attacked here, denying the defendant's motion for a new trial, are affirmed.

Chipman, P. J., and Burnett, J., concurred.