[Crim. No. 3871. In Bank.—October 22, 1935.]

THE PEOPLE, Respondent, v. CLARENCE DE MOSS, Appellant.

Tom Okawara for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

WASTE, C. J.—In an information filed by the district attorney of the county of Merced, the defendant was charged with the murder of Mabel De Moss, his wife. He entered pleas of not guilty and not guilty by reason of insanity. The jury brought in a verdict of murder in the first degree without recommendation and a verdict that he was sane at the time of the commission of the offense. From a judgment imposing the extreme penalty and from an order denying a new trial, defendant prosecutes this appeal.

The homicide was perpetrated on October 14, 1934, at a time when the parties were estranged. They had been living apart for approximately three weeks. The decedent, with four of the six minor children of the marriage, was then living with her parents. The defendant had two of the boys living with him. There is evidence in the record tending to indicate that on four occasions during the year preceding the homicide the defendant had been abusive to the decedent and had mistreated his family, causing the decedent to leave him on each occasion. At least upon one occasion during this period he became intoxicated and beat the decedent. There is evidence to the effect that on the day of the shooting the defendant, accompanied by his two sons, drove his automobile to the place where the decedent was living with the other children. He did not enter the house but conversed with the decedent at the side of the automobile. At the conclusion of the conversation the decedent departed for the house and when about fifty or sixty feet distant from the automobile she received the gunshot wounds which caused her death. The attending physician testified that he saw the decedent at about seven-thirty on the evening of the homicide; that she was suffering extreme shock from gunshot wounds over the right chest, back and side; that there were one hundred and sixty punctures from the shots; and that she died from the gunshot wounds the following morning.

The defendant testified that on the day of the shooting he drove his automobile, accompanied by his two sons, to the place where the decedent was living with her parents; that it was then about dusk; that he did not enter the house but remained near his automobile and talked with his other children who had come out to greet him; that he sent one of the boys to the house to tell the decedent to come out to the automobile; that this invitation was declined and only after he threatened to take one of the girls back to town with him did the decedent leave the house and converse with him; that the children were then sent away to play; that he then kissed the decedent and asked her to return to him; that after some conversation she stated, "well, probably in a short time we can fix things up"; that he kissed her again and she turned back toward the house; that he then called the boys for the return trip to town; that he thereupon undertook to remove a double-barreled shot-gun, carried for hunting purposes, from the rear to the front of the automobile to have it available in the event a rabbit crossed his path on the return trip; that in so removing the gun it accidentally struck the back of the front seat of the automobile causing it to be discharged twice; that he heard someone scream; that he did not know "whether my wife had been hit or what it was"; that it was then dark; that he heard "somebody about . . . got excited . . . turned and ran"; that he was afraid to investigate because "if my wife was hurt, that I would get another beating up"; that he ran into a corn field and "must have fainted or something"; that when he regained consciousness it was still dark, the moon was up and he "did not know what to do"; that he did not realize what had happened and set out to walk to Turlock; that on the way he called for his overalls at a place where previously they had been left for repairs; that he there drank some whiskey, put on the overalls and set out to complete his trip to Turlock, getting an automobile ride part of the way; that during the day he had several glasses of whiskey and some beer to drink; that he loved his wife and did not intend to injure or kill her.

There was evidence tending to show that the gun used by the defendant was found a few hundred feet from the scene of the shooting partly imbedded in sand under a grape vine. Three persons who had heard, but did not witness, the shooting testified that the two discharges of the gun did not occur

in rapid succession but that from two to four seconds intervened between them. There is evidence to the effect that defendant stated in January, 1934, the next time anyone interfered in his family affairs ''someone would get killed'' and that two or three weeks prior to the shooting he said that ''if his wife would not live with him he would just see she did not live with anyone''. There is testimony that on the day preceding the shooting (Saturday) the defendant remarked as he left work that he would see the witness Monday morning if he (defendant) was not ''in jail or shot''. A newspaper man testified that he met the defendant early in the morning of the day following the shooting and that the defendant stated ''I know, I shot my wife, I will go with you, I won't run away.'' The defendant at the same time said the shooting was an accident.

▇ An examination of the entire record satisfies us that there is sufficient evidence to warrant the implied finding of the jury that the shooting was deliberate and intentional and not accidental as contended by the defendant. The quarrels and separations of the parties, together with the threats of defendant, establish sufficient motive for the killing and militate against any theory of an accidental killing. Defendant's flight and change of clothes immediately following the shooting also tend to destroy his defense.

▇ The jury's characterization of the homicide as murder of the first degree also finds support in the record. The evidence of intoxication, referred to by defendant in support of his argument for a reduction in the degree of the offense, is not such as to suggest that he was incapable of forming or entertaining the intent essential to murder of the first degree. At best, the record merely discloses that the defendant had three drinks of whiskey early in the morning and two or three more glasses between 3 and 4 P. M. on the day of the shooting. He had also consumed a bottle or two of beer. The shooting, as stated above, did not occur until the end of the day, about dusk. Moreover, defendant's detailed recollection and minute description of the happenings immediately preceding the shooting tend to dispel any contention that his mind was so confused or disordered by the consumption of intoxicants as to relieve him from full responsibility for the ordinary consequences of his wrongful acts. This, and other evidence, may well have caused the jury to reject the de-

fendant's evidence as to the extent of his intoxication and to conclude that he was not so inebriated as to be unable to appreciate the character and gravity of his deliberate and wrongful acts.

■ Voluntary intoxication is never an excuse for crime. (Sec. 22, Pen. Code; *People* v. *Burkhart*, 211 Cal. 726, 730 [297 Pac. 11].) The weight to be accorded to evidence of intoxication, and whether such intoxication precluded the accused from forming a specific intention to kill and murder, which intent is a necessary element in murder of the first degree, are matters essentially for the determination of the trier of the facts. (*People* v. *Murphy*, 1 Cal. (2d) 37, 40 [32 Pac. (2d) 635].) As already indicated, we cannot say from an examination of the entire record that the defendant was so disordered mentally at the time of the shooting as to preclude the resulting homicide from being of that "willful, deliberate and premeditated" character designated in section 189 of the Penal Code as murder of the first degree.

■ The several assignments of error having to do with the asserted improper admission of evidence tending to establish prior quarrels between the decedent and the defendant and the making of threats by the latter, are clearly without merit. Such evidence was competent to show motive and the state of mind of the defendant. The objection that the evidence is remote goes to its weight rather than to its admissibility. (*People* v. *Wilson*, 23 Cal. App. 513, 521 [138 Pac. 971].) Other rulings complained of present nothing approximating error.

■ Defendant contends that it was prejudicial error for the court below to give the following instruction:

"You are instructed that it is a well-settled rule that drunkenness is no excuse for the commission of a crime. Insanity produced by intoxication does not destroy responsibility when the party, when sane and responsible, made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt, for, when a crime is committed by a party while in a fit of intoxication the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of such intoxication can only be considered by the jury for the purpose of determining the degree

of crime, and for that purpose it must be received with great caution.''

It is urged that the early part of the instruction having to do with insanity is erroneous in that insanity produced in any manner, by intoxication or otherwise, is a defense to criminal prosecution. An instruction in substantially the same language was approved in *People* v. *Jones,* 63 Cal. 168, 169. It is there declared:

''Insanity, from the long continued use of intoxicants, was the only defense made on behalf of the defendant. In substance, the court charged the jury to the effect that insanity produced by intoxication would not destroy responsibility when the party, when sane and responsible, made himself voluntarily intoxicated, and that drunkenness was no excuse for crime, but it was a circumstance for the consideration of the jury in determining the degree of the crime. The charge upon the subject in the very language by which it was given to the jury was considered and approved by this court in the cases of *People* v. *Ferris,* 55 Cal. 588, 592; *People* v. *Williams,* 43 Cal. 344, 345; *People* v. *Lewis,* 36 Cal. 531.''

Moreover, the court below charged the jury in the exact language of section 22 of the Penal Code, as follows:

''No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.''

Complaint is also made of the latter part of the instruction informing the jury that evidence of intoxication may only be considered for the purpose of determining the degree of the crime ''and for that purpose it must be received with great caution''. The quoted language was held not to be prejudicial in *People* v. *Nihell,* 144 Cal. 200, 203 [77 Pac. 916], wherein it is stated:

''Instructions to the effect that evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of the crime, and for this purpose 'it must be received with great caution' have also been often considered by this court, and it is apparently well settled that a

judgment will not be reversed for the giving of such an instruction. *People* v. *Vincent,* 95 Cal. 425, 428 [30 Pac. 581]; *People* v. *Methever* (132 Cal. 326 [75 Pac. 1093]), *supra.* As was said, however, in *People* v. *Suesser,* (142 Cal. 354 [75 Pac. 1093]), *supra,* of the instruction regarding the care with which the defense of insanity should be regarded, so of this; so far as it cautions the jury that evidence of drunkenness shall be received with caution, 'it would be better if such instruction were omitted altogether'. We know of no rule of law which, in view of our constitutional provision as to charging juries upon matters of fact, justifies the giving of such instructions, but we cannot see that the giving of the same could have affected the substantial rights of the defendant.''

■ We cannot agree with the defendant's final contention that the court below exceeded the bounds of propriety or went outside the record in its brief comment on the evidence. As amended in 1934, section 19 of article VI of the Constitution provides: "The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses." It is unnecessary to quote the court's statement to the jury. During its comment, the court on more than one occasion impressed upon the jury, as required by the constitutional provision, that it was the final and exclusive arbiter of questions of fact and of the credibility of the witnesses and was in no way bound by any view or opinion expressed by the court. It then proceeded to briefly narrate a few circumstances developed by the evidence and tending to militate against the defendant's contention that he loved the decedent and that the shooting was accidental. In our opinion, the comment was within the record, or inferences fairly deducible therefrom, and was warranted under the terms of the constitutional provision. No portion of such comment is an "out and out prosecutor's argument" as urged by the defendant. ■ A trial court may, under the constitutional provision, comment upon the evidence as a whole or upon the testimony or credibility of any witness

providing its comment is temperately and fairly made and is not argumentative or contentious to a degree which makes it characteristically an act of advocacy. Its comment is not confined to a colorless recital, by way of summing up the facts. Such a conclusion would destroy and render ineffectual the very purpose of the constitutional amendment. It is impossible to set down a hard and fast rule, each case must necessarily turn upon its own peculiar circumstances. Trial courts should, of course, be cautious in their exercise of this power with a view to protecting the rights of defendants. An examination of the Federal cases on the subject indicates that while the trial court may not direct a verdict of guilty, either directly or indirectly, it may analyze the evidence and comment and express its views with regard to the testimony of the witnesses, leaving the ultimate determination of the issues of fact fairly to the jury. The authorities are collected in a note in 95 A. L. R. 785. In *People* v. *Talkington*, 8 Cal. App. (2d) 75 [47 Pac. (2d) 368], "the comment" of the trial court was obviously contentious in character and for all practical purposes directed the return of a verdict of guilty. The comment of the court below in the present case did not in our opinion, violate any of the defendant's rights and was fair and warranted by the evidence and the constitutional provision above quoted.

The judgment and order are, and each is, affirmed.

Seawell, J., Thompson, J., Shenk, J., Curtis, J., and Langdon, J., concurred.