[Crim. No. 6016. In Bank. May 24, 1957.]

THE PEOPLE, Respondent, v. FOSTER SETH DEMENT, Appellant.

Westrum & Harvey and George R. Harvey for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHENK, J.—The defendant was charged by information with the murder of Nina Sue Dement. The jury found him guilty of murder of the first degree and expressly fixed the penalty at death. He appeals from the judgment of conviction. There was no motion for a new trial.

The deceased obtained an interlocutory decree of divorce from the defendant in September, 1955. He had not become

reconciled with the requirement imposed by the divorce decree that he live apart from his former wife and the three children of the marriage. A police officer testified that in February, 1956, he was present in Mrs. Dement's home in response to a call. Mrs. Dement informed him that she had been receiving telephone calls every 15 or 20 minutes from a person she identified as her husband. She gave the officer permission to listen in if another call came in from her husband. Shortly thereafter the telephone rang and was answered by Mrs. Dement. The officer placed his ear close to the receiver and heard the following statement: ''This is your old man. . . . If you don't come back to me, I'll cut your God damn ears off and stick them in your mouth and make you swallow them, and I'll cut my initials across your face. I'm going to come over and shoot you. When and where do you want it—in the guts, in front of the kids. There are four ways I can get at you. I'll kill Peggy and the kids, or some day I'll get you on the way home from work. Send the kids to the show, and I'll come over and give it to you right in the God damn guts.'' The further statement was made that ''I tried to kill you before once with a butcher knife, and if you don't come back to me, I'll kill you.'' Mrs. Dement stated that the voice was that of her husband.

More than six months after the foregoing threat was made, in the early morning hours of August 22, 1956, the defendant broke into Mrs. Dement's home. In addition to Mrs. Dement there were in the house and asleep two teen age daughters, a teen age son, and a sister of Mrs. Dement. All were aroused by the noise created by the defendant's entrance. Mrs. Dement and her two daughters took refuge in a bedroom, pushing against the bedroom door. The defendant forced his way in and fired five shots into Mrs. Dement's body. She died almost immediately. The defendant stated to his eldest daughter in response to her questions as to why he had killed her mother that ''he couldn't take it any more'' and that the ''kids didn't write to him.''

The defendant pleaded ''Not Guilty'' and ''Not Guilty by Reason of Insanity.'' As defensive matter he introduced evidence to the effect that on the evening prior to the homicide he had been drinking heavily and as a result thereof was incapable of formulating and carrying out a deliberate plan of action. He testified that in his recollection of the events which took place while he was in his wife's home he was not a participant but a spectator only. He also testified that while the gun with which he killed Mrs. Dement was one he had pur-

chased earlier in the year, he did not have it with him earlier in the evening and did not recall going to his apartment to obtain it, as he presumed he had. Expert medical witnesses agreed that the defendant's ability to think reflectively, to plan and premeditate, would be lessened by the amount of alcohol he claimed to have consumed but that he still retained the ability to premeditate and deliberate and would be capable of carrying out a preconceived plan. The police officer who arrested the defendant immediately after the homicide and before the defendant left the premises testified that the defendant was not under the influence of alcohol at the time of the arrest.

After the jury's verdict of conviction on the plea of not guilty, a trial by jury was waived on the plea of not guilty by reason of insanity. That issue was submitted to the court by stipulation on the testimony taken at the trial and the reports of the doctors appointed by the court under the provisions of section 1027 of the Penal Code. The court found the defendant to be sane at the time of the commission of the offense.

█ It is contended by the defendant that the evidence is insufficient to support the implied finding of the jury that he had a deliberate, preconceived intent to kill his wife. However, apart from the evidence of threats made against the deceased's life, it may reasonably be inferred from the circumstances surrounding the killing that the defendant was carrying out a preconceived plan to kill his wife. He deliberately broke into her home, sought her out, fired five shots into her body, and gave as his reason that "he couldn't take it any more." It was stated in *People* v. *Eggers,* 30 Cal.2d 676, at page 686 [185 P.2d 1]: "No rule can be laid down as to the character or amount of proof necessary to show deliberation and premeditation; each case depends upon its own facts. These elements of murder in the first degree may not be inferred from the killing alone, but are matters of fact, which cannot be implied as matters of law. However, the nature of the weapon used, or acts of malice which, in the usual course of things, would cause death, or great bodily harm, tend to provide a reasonable basis for a conviction of murder in the first degree. In arriving at the intention of the defendant, regard should be given to what occurred at the time of the killing, if indicated by the evidence, as well as to what was done before and after that time." There is substantial evidence in the present case to support the determina-

tion by the jury that the killing was one which was "willful, deliberate, and premeditated" (Pen. Code, § 189). ■ The defendant's claim of voluntary intoxication is not an excuse for the offense. (*People* v. *Burkhart*, 211 Cal. 726, 730 [297 P. 11]; Pen. Code, § 22.) "The weight to be accorded to evidence of intoxication, and whether such intoxication precluded the accused from forming a specific intention to kill and murder, . . . are matters essentially for the determination of the trier of the facts." (*People* v. *De Moss*, 4 Cal.2d 469, 474 [50 P.2d 1031].) In this case the evidence of the defendant's state of intoxication is insufficient to require a determination as a matter of law that he was incapable of forming the necessary intent.

■ It is next contended by the defendant that the testimony of the police officer who listened to the telephone conversation between the defendant and Mrs. Dement was inadmissible hearsay; that there was not sufficient identification of the defendant as the speaker, and that the threats made therein were too remote in time to be admissible.

It appears from the record that none of the foregoing objections to the admission of the evidence was made during the trial. In the absence of a seasonable objection in the trial court the defendant should not now be permitted to assign as error the admission of this testimony. (*People* v. *Ferlin*, 203 Cal. 587, 600 [265 P. 230].) Particularly in the case of hearsay evidence objections unless made are waived and cannot be urged for the first time on appeal. (*People* v. *Cole*, 141 Cal. 88, 91 [74 P. 547]; *People* v. *Bennett*, 119 Cal.App.2d 224, 226 [259 P.2d 476]; *People* v. *Brown*, 145 Cal.App.2d 778, 782 [303 P.2d 68].) ■ As to the remoteness of the threats, this court stated in the early case of *People* v. *Cronin*, 34 Cal. 191, at pages 205-206: "The testimony as to the threats made by the defendant was competent, notwithstanding they were made a long time prior to the commission of the homicide. Testimony of that character was admissible for the purpose of showing malice, and its competency is unaffected by the lapse of time, though its weight may be impaired. As was said in the case of *The State* v. *Ford*, 3 Strobhart, 517, note, 'remoteness of time, where the party has made declarations pointing to a guilty intention, cannot render the evidence incompetent. For years may roll over a felon's head while he is arranging his schemes or while the guilty thought conceived in his mind is ripening into the deliberate purpose with which crime is committed.' In that

case there had been a lapse of two and four years.'' (See also *People* v. *De Moss, supra,* 4 Cal.2d 469, 474.)

It is further contended in connection with the admission of the evidence of the telephone conversation that in listening to the conversation the police officer performed an illegal act, and that the evidence concerning the message should have been excluded under the rule of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]. The officer's conduct is claimed to have been improper under section 640 of the Penal Code, as well as section 605 of the Federal Communications Act. When the testimony of the telephone conversation was offered in evidence the only objection interposed by the defendant was on the ground that under section 640 of the Penal Code the witness would be guilty of a felony if he disclosed the content of a telephonic communication clandestinely overheard. The objection was overruled.

■ Section 640 of the Penal Code makes it a criminal act to tap or to make ''any unauthorized connection with any telegraph or telephone wire'' when done by ''means of any machine, instrument or contrivance, or in any other manner. . . .'' Section 640 and the sections immediately preceding and following it are prohibitions against what is commonly known as ''wire tapping'' and the disclosure of information wrongfully obtained thereby. (*People* v. *Trieber,* 28 Cal.2d 657, 662 [171 P.2d 1].) The section has no application to the circumstances of the present case. (See *People* v. *Malotte,* 46 Cal.2d 59, 64 [292 P.2d 517] ; *People* v. *Channell,* 107 Cal.App.2d 192, 200 [236 P.2d 654].)

■ Section 605 of the Federal Communications Act provides: ''. . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. . . .'' The federal courts have generally held that there is no interception within the meaning of section 605 when the intended receiver consents to or directs the overhearing of the communication at the moment it reaches him. (*Goldman* v. *United States,* 316 U.S. 129, 134 [62 S.Ct. 993, 86 L.Ed. 1322] ; *United States* v. *Yee Ping Jong,* 26 F.Supp. 69, 70 ; *United States* v. *Sullivan,* 116 F.Supp. 480, 482 ; *United States* v. *Pierce,* 124 F.Supp. 264, 267 ; *cf. United States* v. *Polakoff,* 112 F.2d 888, 889 [134 A.L.R. 607].) Accordingly there was no violation of either the federal or state statutory provision.

(See *People* v. *Malotte, supra,* 46 Cal.2d 59, 63-64; *People* v. *Cahan,* 141 Cal.App.2d 891, 901-902 [297 P.2d 715].)

Finally, the defendant contends that he is entitled to a reversal or to a reduced sentence because of his claims of error and because the testimony relating to the telephone conversation was inherently improbable. But inherent improbability is not shown by any test suggested by the defendant or otherwise appearing. (See *People* v. *Simpson,* 43 Cal.2d 553, 562-563 [275 P.2d 31]; *People* v. *Johnston,* 73 Cal.App.2d 488, 493 [166 P.2d 633].)

No errors have been shown and an examination of the record discloses nothing which would justify a reversal.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.