[Crim. No. 6114.   In Bank.   Dec. 20, 1957.]

THE PEOPLE, Respondent, v. OSCAR MALDONADO GRANADOS, Appellant.

Joseph M. Rosen for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

McCOMB, J.—This is an automatic appeal from a judgment pronouncing defendant guilty of murder in the first degree after trial before a jury.

On October 1, 1956, defendant and Mrs. Minjarez were living as husband and wife, with her two children, Elvira (age 13) and Raul (age 14), at 316 N. Garey Street, Los Angeles. The four of them had been living as a family group approximately four or five years prior to such date.

On the morning of October 1, 1956, defendant told Raul and Elvira that he was going to take them to school to enroll. Mrs. Minjarez had already gone to work. He drove the children to a filling station across the street from the school, where he left them for 15 or 20 minutes. Upon his return he said the people at the school stated that Raul and Elvira could not go to the same school. He further said he would discuss it with Mrs. Minjarez and they would go to school the next day.

He then drove to a real estate office to discuss the rental

of a house in the rear of 316 N. Garey Street. It was arranged that defendant would clean up the premises and receive one month's rental free.

After leaving the real estate office, the two children and defendant went to a restaurant and had something to eat; thereafter they returned to 316 N. Garey Street. Defendant then gave Raul a note and told him to take it to his mother where she worked, about four blocks away. The note pertained to the rental arrangements previously made and requested money.

When Raul returned home with the money his mother had given him, he saw defendant at the rear of the house. As he started to enter, defendant came running out, and told him to get some alcohol because his sister was fainting. Raul observed that there was blood on one of defendant's hands. The other hand was behind his back.

Raul went to the front house and looked for some alcohol but found none. Defendant then said they should go to the doctor and get an ambulance. At this time Raul noticed that defendant's hand had been washed and that it smelled like soap.

Defendant and Raul then got into an automobile and proceeded toward Whittier. They stopped in front of a drug store, and defendant gave Raul 50 cents, telling him to buy some alcohol, and said that he would drive around the block and pick him up. Defendant never returned to the place where he had left Raul.

Shortly after leaving Raul, defendant telephoned Mrs. Minjarez and told her that her daughter had poisoned herself. Mrs. Minjarez immediately went to the premises at 316 N. Garey, but could not find her daughter. She then went for a Mr. Torres, who returned with her. They observed Officer Towles near the house and told him of their mission. The officer told Mr. Torres to look around outside the house and also in the rear house.

Mr. Torres went inside the rear house and found Elvira's body in the bedroom lying on the floor. Her skirt was up above her private parts, and an apron over her dress was pulled down below them. Bare skin showed in the area of the hips, at the side of the apron, and above it was a wad of clothing, which was the skirt.

There were blood stains on the wall, floor and decedent's head. In a corner of the living room behind a small gas heater was a machete covered with fresh blood.

Defendant testified that when he was about 9 or 10 years old he was in an accident in which a truck ran over him, causing head injuries, as a result of which he would go temporarily blind and have very severe head pains; also that occasionally he would "go haywire." During such spells he would have no recollection of his actions.

He testified further that after lunch on October 1, 1956, he drank a can of beer; that Elvira was helping him clean the inside of the rear house; that the doors were open; and that during the course of the cleaning he asked Elvira if she was a virgin, to which she replied that it was none of his business. He said that she had never answered him like that before and he struck her on the face with his hand, but did not recall striking her with the machete; that he "just went haywire"; that he did not know what he was doing after that time; and that the next thing he remembered he was going out of the rear house. He also said that he saw Raul and told him something was wrong with Elvira and they were going to get a doctor; that he dropped Raul at a drug store; and that the next thing he remembered he was driving his automobile but he did not know where he was going.

Defendant was arrested in El Paso, Texas, and was returned to Los Angeles by the authorities.

■ Defendant contends: First: *The trial court committed prejudicial error in the admission of the following evidence*:

(a) During the examination of decedent's brother, Raul, the district attorney asked him: "Now in the course of the conversation [between decedent and Raul] did she make any complaint to you—would you answer that yes or no?" to which Raul answered, "Yes," whereupon the court said, "Just a moment, objection sustained, answer stricken."

Clearly, in view of the court's prompt ruling in sustaining an objection to the question and striking the answer, defendant was not prejudiced.

■ (b) Decedent's mother was permitted to testify relative to a conversation she had with defendant in September 1953 to the effect that she told defendant that the next time he bothered her daughter she would go to the police and he replied that the police would have to have more brains than he because if they left him alive he would kill Mrs. Minjarez and her two children.

Such evidence was admissible as constituting an accusatory statement, in that defendant was accused of molesting the

child and told to stop, to which accusation he made no denial but instead threatened to kill; and the court properly over-ruled an objection to the testimony on this ground.

Such evidence was also admissible on the ground that it tended to establish prior threats of defendant toward decedent and was competent to show motive and the state of mind of defendant. The objection to the remoteness of such evidence goes to its weight rather than to its admissibility. (*People* v. *Dement,* 48 Cal.2d 600, 604 [4] [311 P.2d 505]; *People* v. *De Moss,* 4 Cal.2d 469, 474 [4] [50 P.2d 1031]; *People* v. *Flemming,* 218 Cal. 300, 309 [3] [23 P.2d 28].)

■■ Second: *The district attorney committed prejudicial error:*

(a) In his opening statement wherein he said Raul would testify that about a year prior to October 1, 1956, defendant sent him out to buy a paper when his mother was not home and that when Raul returned his sister made an immediate complaint of a sexual proposition defendant had made to her.

This contention is devoid of merit for these reasons: (1) No objection was made to the statement, and (2) opening statements are supposed to be an outline of what the People intend to prove, and failure to do so, whether on account of rules of evidence or otherwise, does not necessarily indicate prejudice. (*People* v. *Planagan,* 65 Cal.App.2d 371, 407 [6] [150 P.2d 927].)

■ (b) In his argument to the jury when he said he would like to examine some of the evidence in terms of the theory that defendant killed Elvira in the course of committing or attempting to commit "a 288 on her."

This alleged error is also without merit. Defendant objected on the ground that the inference the deputy district attorney was drawing from the evidence was unreasonable. The objection was overruled by the court, who properly held that whether the inference made by the arguer was reasonable or not was a question for the jury to decide.

■ Third: *The trial court committed prejudicial error in not giving requested instructions:*

(a) That if the jurors had a reasonable doubt that the defendant committed a violation of section 288 of the Penal Code or attempted violation of said section on the date of October 1, 1956, then they could not return a verdict of guilty of first degree murder based upon the theory that there was an unlawful killing of a human being with malice afore-

thought in the perpetration or attempted perpetration of a violation of section 288 of the Penal Code.[1]

It was error to refuse this instruction. It accurately stated the law and pinpointed the theory of the defense.

■ Section 1096a of the Penal Code[2] declares that when the statutory definition of reasonable doubt is given (see Pen. Code, § 1096[3]), no other instruction need be given defining reasonable doubt. Despite this section, a defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered. (*People* v. *Kane,* 27 Cal.2d 693, 699 [3] et seq. [166 P.2d 285]; *People* v. *Wilson,* 100 Cal.App. 428, 431 [2] [280 P. 137]; *People* v. *Plywood Mfrs. of Calif.,* 137 Cal.App.2d Supp. 859, 872 [291 P.2d 587].)

■ (b) That the discretion of jurors in considering the effect of evidence as proof is not absolute and that it is their duty to avoid fanciful theories and unreasonable inferences and not to resort to imagination or suspicion.

This instruction was properly refused.

The court did instruct the jurors that it was their duty to try the issues of fact presented by the allegations in the information and defendant's plea of not guilty; that they should perform this duty uninfluenced by passion or prejudice against defendant; that neither the fact that defendant had been arrested nor the fact that an information had been filed

---

[1]Section 288 of the Penal Code reads: "Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

[2]Section 1096a of the Penal Code reads: "In charging a jury, the court may read to the jury section 1096 of this code, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

[3]Section 1096 of the Penal Code reads: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of his presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

against him nor the fact that he had been brought before the court to stand trial was evidence of his guilt; and that they were not permitted to infer or to speculate from any or all of such facts that defendant was more likely to be guilty than innocent. Also, they were told that they must be governed solely by the evidence introduced in the trial and the law as stated to them by the judge; that the law forbade them to be governed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling; and that it was expected that they would conscientiously and dispassionately consider and weigh the evidence and apply the law of the case.

Since the requested instruction was covered by instructions which were given, defendant is not in a position to complain. (*People* v. *Morlock*, 46 Cal.2d 141, 150 [13] [292 P.2d 897].)

Fourth: *The evidence is insufficient as a matter of law to sustain a conviction of murder in the first degree.*

It is clear from the record that the prosecution for first degree murder was predicated on the theory that defendant's act was an unlawful killing of a human being with malice aforethought committed in the perpetration or attempted perpetration of a violation of section 288 of the Penal Code. This was expressly stated by the district attorney in his opening statement when he told the jury: "It is the theory of the People that this defendant killed in the course of committing a child molestation."

The evidence is sufficient to sustain the finding of an unlawful killing of a human being with malice aforethought, which establishes the crime of murder. However, there is a total absence of evidence that defendant violated or attempted to violate section 288 of the Penal Code.

The record merely shows that defendant asked decedent prior to the time of killing her whether she was a virgin and that when her dead body was found, the apron she was wearing came down below her private parts, but that the skirt she was wearing was considerably above them.

The testimony of the autopsy surgeon disclosed no evidence of contusion or laceration on the private parts of decedent's body, and a microscopic examination disclosed no spermatozoa.

The foregoing evidence does not support a finding that defendant had either committed or attempted to commit an act in violation of the provisions of section 288 of the Penal Code. Hence, the murder in this case was murder of the second degree.

The judgment of the trial court of murder of the first degree

is modified and the cause remanded to the trial court with directions to enter judgment against defendant finding him guilty of murder in the second degree and thereupon to pronounce judgment upon him as prescribed by law.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

While the evidence purporting to show that defendant killed Elvira in the course of committing or attempting to commit an act with her prohibited by section 288 of the Penal Code is much stronger than the evidence relied upon by the prosecution in the recent case of *People* v. *Craig, ante,* p. 313 [316 P.2d 947], as showing that the killing there was in the course of committing or attempting to commit rape, and the author of the majority opinion here joined with two of his associates in a dissenting opinion in that case, I am nevertheless of the opinion that there is insufficient evidence in the case at bar to show that the killing here was in the course of committing or attempting to commit an act prohibited by section 288 of the Penal Code.

I do not, however, agree with the conclusion reached by the majority that the evidence fails to establish the crime of murder of the first degree or that the prosecution relies solely upon the contention that the verdict of murder of the first degree can be sustained solely on the theory that defendant killed Elvira in the course of committing or attempting to commit an act with her prohibited by section 288 of the Penal Code. In this connection I will quote the following excerpt from the brief of the attorney general: "While the Court instructed the jury that murder which is committed in the perpetration of or attempt to perpetrate any act punishable under Penal Code Section 288 is murder of the first degree, the Court also instructed that murder perpetrated by any kind of wilful, deliberate and premeditated killing is murder of the first degree. . . . We submit that there are circumstances reasonably supporting a finding that the killing was wilful, deliberate and premeditated. The machete . . . is a heavy instrument. The fact that it was found near the body and appeared to be in a bloody condition, and the fact that there were wounds on the body which could have been inflicted by such an instrument, support the conclusion that it was wielded by appellant. . . . There was evidence that it was about the premises prior to Elvira's death. . . . The autopsy testimony disclosed that the body of the deceased was brutally hacked.

The jury could reasonably conclude that the machete was used in a manner indicative of an intent to inflict death. Other significant evidence includes appellant's sending Raul away shortly prior to the killing and of the threat he made previously against Elvira and the other members of the Minjarez family. We submit that by analogy this language in *People* v. *Stroble*, 36 Cal.2d 615, 619-620 [226 P.2d 330], is pertinent: " '. . . Here, five different implements were used, each in a manner evidencing an intent to inflict death, not merely injury or random mutilation. There is evidence apart from defendant's confessions that before the child's death the implements were at various places about the premises. An inference can be drawn that the killer who collected and used the implements had determined that he wished to bring about death and carried out that determination. This, in the light of the other circumstances including the charges against defendant which were then pending, is a sufficient prima facie showing of deliberation and premeditation.'

"For the foregoing reasons, we submit that the verdict of the jury in the case at bar was a proper one."

The foregoing recitation of facts is in accordance with the record in this case, and in my opinion fully supports the verdict of murder of the first degree.

It also appears that the trial court correctly instructed the jury on the issues of premeditation and deliberation and there can be little doubt that the verdict of first degree murder was based upon a determination that the murder was the result of a wilful, deliberate and premeditated killing.

I do not agree with the holding of the majority that the testimony of Elvira's mother relative to a threat made by the defendant in September, 1953 to kill her and her two children was admissible as constituting an accusatory statement as such testimony has none of the characteristics of an accusatory statement (*People* v. *Simmons*, 28 Cal.2d 699 [172 P.2d 18]). Such testimony was, however, admissible for the purpose of showing threats made by defendant toward decedent and his state of mind and motive which abundantly supports the determination by the jury that the murder was the result of a wilful, deliberate and premeditated killing.

For the foregoing reasons I would affirm the judgment.

SPENCE, J.—I dissent.

The prosecution has contended throughout the trial and appeal that the brutal murder of the 13-year-old girl consti-

tuted murder of the first degree upon two theories: First, that there had been a "willful, deliberate, and premeditated killing"; and, second, that the murder had been committed in the perpetration of, or attempt to perpetrate, an "act punishable under section 288." (Pen. Code, § 189.) The trial court gave instructions upon both theories, and, in my opinion, there was ample evidence to sustain the conviction upon both.

With respect to the second theory, it is well established that the "lewd and lascivious" acts proscribed by section 288 of the Penal Code need not involve rape, attempted rape, violence or physical injury of any kind, but may consist of a mere touching or handling of the body or clothing of the child with the requisite lustful intent. (*People* v. *Coontz,* 119 Cal.App.2d 276 [259 P.2d 694] ; *People* v. *Lett,* 69 Cal.App.2d 665 [160 P.2d 112] ; *People* v. *Lanham,* 137 Cal.App. 737 [31 P.2d 410] ; *People* v. *Rossi,* 37 Cal.App. 778 [174 P. 916] : *People* v. *Dabner,* 25 Cal.App. 630 [144 P. 975] ; see also *People* v. *Batsford,* 91 Cal.App.2d 607 [205 P.2d 731] ; *People* v. *Hartshorn,* 59 Cal.App.2d 285 [138 P.2d 782] ; *People* v. *Bronson,* 69 Cal.App. 83 [230 P. 213].) It is further significant that murder committed either in the perpetration of, or in the attempt to perpetrate, any act proscribed by section 288 constitutes murder of the first degree.

In my opinion, it may be reasonably inferred from all the evidence that defendant's acts immediately preceding the killing were sex motivated, and that the murder was committed when the girl repulsed defendant's attempts to commit lewd acts "with the intent of arousing, appealing to, or gratifying [his] lust or passions or sexual desires." (Pen. Code, § 288.) It is therefore wholly immaterial that no rape had actually been committed or, as stated in the majority opinion, that "The testimony of the autopsy surgeon disclosed no evidence of contusion or laceration on the private parts of decedent's body, and a microscopic examination disclosed no spermatozoa."

As I am convinced from my review of the entire record that there was ample evidence to sustain the conviction of first degree murder, and that there was no prejudicial error, I would affirm the judgment and the order denying a new trial.

Shenk, J., concurred.