[Crim. No. 16599. Second Dist., Div. Five. May 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE JOE EVANS, Defendant and Appellant.

## COUNSEL

Joseph A. McClaugherty, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant was charged by information with two counts of violation of Penal Code section 187 (murder) and one count of violation of Penal Code section 217 (assault with intent to commit murder). Count I alleged the murder of Wardell Adams; count II alleged the murder of Elaine Adams; and count III alleged an assault with intent to commit murder on the person of Sandra Evans. Defendant pled not guilty. After a jury trial, he was found guilty of both counts of murder, which were found to be in the first degree, and of assault with intent to commit murder. The jury fixed the penalty on the murder counts as imprisonment in the state prison for life. Defendant was sentenced to imprisonment in the state prison for the term of his natural life on counts I and II, and to imprisonment in the state prison for the term prescribed by law on count III, the sentences on all three counts to run concurrently with each other. Defendant appeals from the judgment.

Viewed in the light most favorable to the prosecution, the evidence showed that at the time of the incident the defendant was married and in the process of a divorce action commenced by his wife. After a conciliation hearing, defendant drove his vehicle to the place of the shooting, stopped his car, took a .32 caliber revolver from his car and approached the car in

which the victims were seated. Defendant shot and killed the mother and father of his wife, and severely wounded his wife.[1] The defendant took his injured wife to the Harbor General Hospital, and it was there he was arrested.

 On appeal, defendant first contends that he was denied his constitutional right to a trial by jury because the court did not properly advise him of his rights prior to his waiver of a 12-man jury.

During the trial of the case, three jurors became ill. When the first two became ill, they were replaced by alternates, and the trial proceeded. Then, after completion of final argument, but before the jury was instructed, a third juror became ill. The following colloquy then took place:

"THE COURT: Mr. Schoenheit [defense counsel], you informed the Court that you had discussed the matter with Mr. Evans, and it is his desire to proceed with the eleven jurors that are presently in the box; is that correct?

"MR. SCHOENHEIT: That's correct.

"THE COURT: Mr. Evans, it is your desire, is it, to proceed with the eleven jurors that are presently in the box?

"THE DEFENDANT: This is true, Your Honor.

"THE COURT: You understand that we can postpone this matter until the juror is able to return, and instruct the jury at that time?

"THE DEFENDANT: Yes, I do understand that.

"THE COURT: You are waiving your right to put the matter over, and you ask that we proceed this morning with the eleven jurors who are present?

"THE DEFENDANT: Yes, I am waiving my right.

"THE COURT: Counsel joins?

"MR. SCHOENHEIT: I join.

"THE COURT: Do the People join?

"MR. FEIFER [District Attorney]: The People join.

"THE COURT: Very well, then, ladies and gentlemen of the jury, we will proceed.

---

[1] A .22 caliber weapon was also involved, apparently causing the injuries to the wife. This weapon was possessed by the father, but apparently was obtained by defendant during the incident and used by him.

"MR. FEIFER: Shall we enter into a stipulation that it is satisfactory that we proceed with eleven jurors?

"THE COURT: I think it is sufficiently on the record that the People have joined, that the defendant has waived his right to have twelve jurors, and counsel has joined in that waiver."

Defendant contends that the court inadequately advised him before taking his waiver, because at no time was he told that he had a right to a mistrial due to the illness of the third juror.

■ We initially note that the "California Constitution, article I, section 7, provides that a trial by jury may be waived in all criminal cases by the consent of both parties, expressed in open court by the defendant and his counsel. Our courts have held that pursuant to this provision a defendant and his counsel can consent to a trial by 11 jurors, and that the court has jurisdiction to pronounce judgment on such a jury's verdict. (*People* v. *Clark,* 24 Cal.App.2d 302 [74 P.2d 1070]; hearing den.; cert. den., 304 U.S. 574 [58 S.Ct. 1049, 82 L.Ed. 1538].) In holding the waiver effective and the verdict valid, the court stated (p. 304): '. . . The defendant was authorized by article I, section 7, of the California Constitution to, and did in open court formally waive the absence of the 12th juror, consenting to be tried by the remaining 11 jurors. That procedure did not divest the court of jurisdiction to pronounce judgment. There is no sound reason why a defendant may not waive a part of a jury since the constitutional provision authorizes him to waive the entire jury.' " (*People* v. *Patterson,* 169 Cal.App.2d 179, 186-187 [337 P.2d 163].[2] ■ When a defendant is represented by counsel, the trial court is not required to explain to him the nature and consequences of his action in waiving a jury trial. (*People* v. *Lookadoo,* 66 Cal.2d 307, 311 [57 Cal.Rptr. 608, 425 P.2d 208].) There is no reason why the same rationale should not apply to the case where defendant consents to be tried by an 11-man jury.

■ In the middle of the trial, defendant, who was represented by the public defender, informed the court that he disagreed with his counsel as to how the case should be handled, and asked if the court could appoint another attorney. His request was denied. He now contends that he was

---

[2]We note that in *People* v. *Ragsdale,* 177 Cal.App.2d 676, at p. 678 [6 Cal.Rptr. 640], the court invited the state Supreme Court to reconsider this rule. The same rule as in *Patterson* is found in the federal courts under rule 23(b) of the Federal Rules of Criminal Procedure. This rule is merely a restatement of what was existing federal practice, the constitutionality of which was approved in *Patton* v. *United States,* 281 U.S. 276 [74 L.Ed. 854, 50 S.Ct. 253, 70 A.L.R. 263]. Subsequent federal cases have reaffirmed the defendant's right to waive a jury of 12 persons. (See *Williams* v. *United States,* 332 F.2d 36, cert. den. 379 U.S. 976 [13 L.Ed.2d 566, 85 S.Ct. 672]; *Beatty* v. *United States,* 377 F.2d 181 (reversed on other grounds), 389 U.S. 45 [19 L.Ed.2d 48, 88 S.Ct. 234]; Annot. 93 A.L.R.2d 410.)

deprived of his right to adequate representation of counsel because he did not have the same right that a wealthy client would have to discharge his attorney and hire another who agreed with him on how the case should be handled. However, an indigent defendant's constitutional right to counsel is satisfied by the appointment of a public defender, and the defendant has no right to the appointment of any particular attorney. (*People* v. *Hughes,* 57 Cal.2d 89, 98 [17 Cal.Rptr. 617, 367 P.2d 33].) The record demonstrates that the public defender ably represented defendant throughout the trial.

■ Defendant finally argues that the court either should not have submitted the question of first degree murder to the jury, or should have reduced the verdicts to second degree murder because there was no evidence of premeditation or deliberation. However, premeditation and deliberation can be proven by circumstantial evidence. (*People* v. *Dement,* 48 Cal.2d 600, 603 [311 P.2d 505].) Indeed, except in the unusual instance where the defendant admits that he deliberated and premeditated, these elements can only be proven by circumstantial evidence. In the instant case, there is ample evidence to support the verdicts of first degree murder. Viewing the evidence in the light most favorable to the people (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]), it was shown that defendant resented his in-laws' alleged interference with his marriage; that as defendant left the courthouse, he pointed his finger at the victims of the subsequent shooting, and his mouth formed the words, "I'm going to get you"; that on the day of the crime, defendant and/or his car had been patrolling the general area of the shooting from as early as 6:30 in the morning; that after defendant had left the courthouse, he had stopped at a park to think; and that after he had shot his father-in-law, defendant had grabbed the latter's neck and said, "I told you I was going to get you." This evidence adequately supports the verdicts of first degree murder.

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.