[No. B015541. Second Dist., Div. Six. July 3, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST VINCENT MARTINEZ, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, the portion of the opinion certified for publication follows.

**COUNSEL**

Richard L. Phillips, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert F. Katz and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Evidence that a brutal murder was committed because of jealousy may support a first degree murder conviction if the murder was the product of planning and premeditation. Substantial evidence supports the first degree murder conviction of Ernest Vincent Martinez, Jr.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . *

### FACTS

Ernest Vincent Martinez, Jr., and Julie Ann R. had lived together in a studio apartment for about five weeks. On Christmas Eve, 1984, they walked to a party, which was about a mile away from their apartment. At the party they both drank beer and quarrelled. Julie Ann R. became noticeably drunk. Early in the evening, Martinez left the party and visited Joseph Gonzales, a friend working at a local restaurant. Martinez invited Gonzales to visit him at home when Gonzales got off work at 12:30 that night. Martinez then left a second time at about 11:30 p.m. to buy beer.

While Martinez was out buying beer, Julie Ann R. began walking home alone, although she had difficulty because of her inebriated state. William Meyers, who had met Julie Ann R. that night offered her a ride home in his car. Julie Ann R. accepted, and brought Meyers into the apartment she shared with Martinez. Soon they were in bed and engaged in sex. Julie Ann R. told Meyers that her boyfriend would not be home for awhile.

In the meantime, Martinez returned to the party and learned that Julie Ann R. had left with Meyers. He appeared unconcerned. He grabbed a bottle of beer and began to dance by himself. After some time, he asked for a ride home and when he was refused, he ran home.

Julie Ann R. and Meyers were in bed when they heard Martinez banging on the front door. Meyers got up and began to put on his pants as Julie Ann R. directed him to the bathroom window. But Martinez ran around the building and got to the rear window first. Seeing Julie Ann R. in the bathroom with Meyers, Martinez came in through the window as Meyers fled out the front door. Martinez grabbed the shower curtain rod and chased Meyers down the street, hitting him once or twice with the curtain rod.

Giving up the chase, Martinez returned to the apartment and found Julie Ann R. naked in an alleyway around the side of the building. He either

---

grabbed her and caused her to fall, so that her head hit a gas meter, or he struck her and pushed her against a wall. In either event, he caused her to become semiconscious or unconscious. A neighbor heard a faint cry from the alley, went to investigate and found Martinez standing over a body. He asked what was going on, and Martinez answered, "I caught her fucking someone else." Another neighbor heard screams from the alley and an angry voice saying, "Because you don't know what the hell you're doing."

Martinez then dragged Julie Ann R. around the building, through a courtyard and into their apartment. Along the way he beat her with his fist and pounded her head against the pavement. Once in the apartment, Martinez beat Julie Ann R. with his fists and elbow, kicked her in the face, neck and vagina, broke a beer bottle over her forehead. and finally jumped on her. She died in the apartment, within minutes of the beating, of a lacerated liver.

Martinez was charged with the first degree murder of Julie Ann R., on the theory that the killing was willful, deliberate and premeditated, or was the result of torture. (Pen. Code, § 189.) The defense argued that Martinez exploded in anger upon finding his girlfriend in bed with another, and so there was no premeditation. The jury returned a verdict of first degree murder and Martinez was sentenced to 25 years to life.

On appeal, Martinez argues, among other things, there was insufficient evidence to sustain a conviction for first degree murder.

. . . . . . . . . . . . . . . . . . . .*

## DISCUSSION

An unjustified murder of a human being is presumed to be second, rather than first degree murder. (*People* v. *Anderson* (1968) 70 Cal.2d 15, 25 [73 Cal.Rptr. 550, 447 P.2d 942]; *People* v. *Rowland* (1982) 134 Cal.App.3d 1, 9 [184 Cal.Rptr. 346]; Pen Code, § 187.) Only where the state proves beyond a reasonable doubt that the defendant killed by means of ". . . a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing . . ." or during the commission of certain felonies, is the murder of the first degree. (Pen. Code, § 189; *People* v. *Anderson, supra,* at p. 25.)

---

*See footnote, *ante,* page 363.

Martinez argues on appeal that the jury had before it insufficient evidence with which to convict him of first degree murder under either the willful, deliberate and premeditated killing or the torture/murder theory.

█ In reviewing a criminal conviction for sufficiency of the evidence, the test is whether there is substantial evidence supporting the conclusion of the trier of fact. (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr.431, 606 P.2d 738, 16 A.L.R.4th 1255].) As a reviewing court we do not ask whether we believe the evidence proves guilt beyond a reasonable doubt, but whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d. 560, 573, 99 S.Ct. 2781]; *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 90 Cal.Rptr. 417, 475 P.2d 649]; *People* v. *Johnson, supra,* at p. 576.) To be substantial, the evidence must be reasonable, credible and of a solid nature; it must be enough to inspire confidence in the conviction. (*Ibid.; People* v. *Reyes* (1974) 12 Cal.3d 486, 497 [116 Cal.Rptr. 217, 526 P.2d 225]; *People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].)

█ In determining whether substantial evidence exists to support the jury's determination of the degree of a crime, the appellate court views the evidence in a light most favorable to the People and presumes in support of the verdict every fact the jury could reasonably deduce from the evidence. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Reilly, supra,* 3 Cal.3d 421, 425.)

But we do not limit our review of the evidence to those facts favorable to the People. We must resolve the issue in light of the whole record as presented to the jury, and we must judge whether the evidence favoring each of the essential elements of the crime is substantial. " '[I]t is not enough for the respondent simply to point to "some" evidence supporting the finding, ...' " (*People* v. *Johnson, supra,* 26 Cal.3d 557 577 quoting *People* v. *Bassett, supra,* 69 Cal.2d 122, 138.) In the absence of substantial evidence to support first degree murder, we must reduce the conviction to second degree. (*People* v. *Anderson, supra,* 70 Cal.2d 15, 23.)

### A. Willful, Deliberate and Premeditated Killing.

█ A verdict of murder in the first degree based on the theory of a willful, deliberate and premeditated killing is proper only if the defendant killed "as a result of careful thought and weighing of considerations; as a *deliberate* judgment or plan; carried on coolly and steadily, [especially] according to a preconceived design; ..." (*People* v. *Bender* (1945) 27 Cal.2d 164, 183 [163 P.2d 8]; *People* v. *Caldwell* (1955) 43 Cal.2d 864, 869 [279

P.2d 539]; *People* v. *Velasquez* (1980) 26 Cal.3d 425, 435 [162 Cal.Rptr. 306, 606 P.2d 341].)

█ In *People* v. *Anderson* our Supreme Court categorized three types of evidence which must exist in one combination or another in order to find sufficient evidence to convict the defendant of willful, deliberate and pre-meditated murder. These categories are: "(1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward and explicable as intended to result in, the killing—which may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather then 'mere unconsidered or rash impulse hastily executed' [citation]: (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (*People* v. *Anderson, supra,* 70 Cal.2d at p. 26-27.)

"Analysis of the cases will show that this court sustains verdicts of first degree murder typically when there is evidence of all three types and other-wise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*Id.* at p. 27.)

█ Martinez argues that here none of these three combinations appear in the record. We disagree. There was sufficient evidence of motive and planning to sustain the conviction for first degree murder. The circumstan-tial evidence here provides a reasonable foundation for an inference of premeditation and deliberation, and is not merely conjecture and surmise. (*Id.* at p. 25; *People* v. *Bender, supra,* 27 Cal.2d 164, 186.)

Here the evidence is of the type that a trier of fact could find falls within categories one and two in *Anderson*. The record is replete with evidence that Martinez beat and killed Julie Ann R. for revenge and punishment for her sexual indiscretion, and that he had considered doing so for some time prior to the murder. Witnesses testified that in the weeks prior to the murder Martinez repeatedly threatened to kill or hurt Julie Ann R. if he ever caught her with another man. On two occasions, Martinez came to the motel where Julie Ann R. was working and told the motel manager that if he caught Julie Ann R. with the manager's son he would kill her (Julie Ann

R.). Other witnesses testified that Martinez told them that if Julie Ann R. ever left him, he would kill her, and he threatened to hurt her and to "F-U-C-K HER world."

Martinez' threats to kill Julie Ann R. is evidence of planning. They are similar to the threats in *People* v. *Evans* (1970) 8 Cal.App.3d 152, 157 [87 Cal.Rptr. 315], where the defendant warned the victim, " 'I'm going to get you,' " and after shooting him said, " 'I told you I was going to get you.' " Here, Martinez warned Julie Ann R. that he'd kill her if she went with another man, and while beating her he paused to explain to a witness that it was because "I caught her fucking somebody else." In a phone conversation with a friend the morning after the murder, Martinez explained, "I caught Julie in the room with a man and they both was naked." A few moments later in the conversation, after describing the beating, he asked his friend, "What would you have done?"

The evidence supports the inference that Martinez, having previously formed the intent to kill Julie Ann R., if he ever caught her with another man, killed her in conformity with that preconceived plan. " 'In arriving at the intention of the defendant, regard should be given to what occurred at the time of the killing, if indicated by the evidence, as well as to what was done before and after that time.' " (*People* v. *Dement* (1957) 48 Cal.2d 600, 603 [311 P.2d 505] quoting *People* v. *Eggers* (1947) 30 Cal.2d 676 at p. 686 [185 P.2d 1].)

There was also evidence to support a theory that Martinez reflected on his acts before Julie Ann R. died. He had time to consider his reaction when he first learned that Julie Ann R. had left the party with a man and when he was running home. After chasing Meyers down the street, he deliberately returned to the apartment and searched for Julie Ann R., who was by then in the alleyway. When his beating of Julie Ann R. was interrupted by a neighbor who asked what was happening, Martinez stopped, answered, and after this momentary reflection continued to brutalize her.

Once Julie Ann R. was unconscious, he struggled to drag her body into the apartment, where according to some evidence he turned on the stereo loud enough to muffle the sounds of the beating. This evidence supports a finding that Martinez killed Julie Ann R. with deliberation and premeditation.

The facts about Martinez' prior relationship with Julie Ann R. and the circumstances under which he killed her constitute evidence from which a jury could infer that Martinez had a motive to kill her. This falls within the second category discussed in *Anderson*. Martinez often displayed his jealous

nature by threatening Julie Ann R. in public. On the night of the Christmas party, Martinez warned Julie Ann R. not to dance "close with all the dudes." Later, upon finding out that she had left the party with another man, Martinez ran home, came in through the bathroom window, chased Meyers down the street, and then came back looking for Julie Ann R. A neighbor heard Martinez say to Julie Ann R. during the beating, "Because you don't know what the hell you're doing." Martinez admitted asking Julie Ann R., during a moment when she had regained consciousness, "Why did you do it?" These facts support the inference that Martinez was motivated by jealousy when he killed Julie Ann R.

Martinez submits that his acts were the result of an unpremeditated explosion of passion and violence. That Martinez returned home to find his girlfriend in bed with another man suggests he acted out of passion. His inviting Joseph Gonzales to visit him at home later that night suggests that by the middle of the evening, he did not plan to murder Julie Ann R. The jury nevertheless had a sufficient basis to find premeditation and deliberation. Martinez may not have planned the specific date and time of the murder, but he repeatedly warned Julie Ann R. and others of his intent to kill or harm her if he ever found her with another man.

In *People* v. *Caldwell* (1955) 43 Cal.2d 864 [279 P.2d 539], the defendant killed his wife after making repeated threats to "'... do her in.'" (*Id.,* at pp. 866-869.) Our Supreme Court held that these threats were evidence that the question of murder "had been associated in defendant's mind in the past, and there is no reason to believe that they were not so associated and reflected upon for the period of approximately an hour that he and his wife argued before her death." (*Id.,* at p. 870.) "Whether or not these threats were the result of serious contemplation before they were made, they at least justify the inference" that Martinez considered killing Julie Ann R. in reaction to certain events. (*Id.,* at p. 869.)

Finding Julie Ann R. home with Meyers was not an unanticipated event, because Martinez knew she had left the party with somebody. Although the savagery of the murder could support a finding that Martinez acted solely out of an uncontrollable rage, the evidence of intention to act in such a way if Julie Ann R. were unfaithful suggests planning and deliberation.

It may seem paradoxical to discuss in the same factual setting, premeditation, with its connotation of cool detachment on the one hand, and rage on the other, but these antithetical traits may coexist when they are exhibited at different times. By planning in advance to give into rage, there is less likelihood of controlling that rage when it occurs. The evidence shows that Martinez had long predicted Julie Ann R.'s infidelity and considered his

reaction to it. His behavior the night of the murder was as he planned it to be, and as he had predicted it to be. The actual murder need not be committed in a clinical, or dispassionate manner in order for it to be first degree.

Martinez argues that he was too intoxicated to act with deliberation according to a premeditated plan. The jury, however, considered expert testimony that, despite his high blood alcohol level, he could have acted with a purpose or plan in mind. (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 749 [175 Cal.Rptr. 738, 631 P.2d 446].) The People also point out that Martinez was sober enough to run one mile home, seek assistance from neighbors after the beating, and to tell the police and others that someone else had raped and beaten his girlfriend. The jury could have properly concluded that he was also sober enough to act deliberately in killing Julie Ann R.

### B. Torture/Murder Theory

The alternative theory to support a first degree murder conviction was that Julie Ann R. died while being tortured by Martinez. (Pen. Code, § 189.) To prove murder by torture the People must show that Martinez intended to inflict cruel suffering on Julie Ann R. for the purpose of revenge, extortion, persuasion or to satisfy some other untoward propensity. (*People* v. *Anderson* (1965) 63 Cal.2d 351, 359-60 [46 Cal.Rptr. 763, 406 P.2d 43]; *People* v. *Tubby* (1949) 34 Cal.2d 72, 77 [207 P.2d 51].) Murder by torture is murder committed with a willful, deliberate and premeditated intent to inflict extreme and prolonged pain. (*People* v. *Steger* (1976) 16 Cal.3d 539, 546 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206].)

The nature of the beating and Julie Ann R.'s injuries supports the view that Martinez intended to inflict serious and prolonged pain on her. A few details will suffice to make the point: while dragging Julie Ann R.'s unconscious body into the apartment, Martinez pounded her head against the pavement several times in an attempt to "wake her up." He kicked her in the neck and face hard enough to leave imprints of his tennis shoes on her neck and to break her front teeth and her nose. He also kicked her in the vagina with enough force to splatter blood back onto his pants. He cracked a beer bottle on her head, and finally jumped on her body with enough force to rupture her liver. That Julie Ann R. may have been unconscious during some of this time and so felt no pain is irrelevant. It is not necessary that the victim actually be aware of the pain. The murderer who intends to inflict pain for personal satisfaction may not assert the victim's condition as a defense to torture/murder. (*People* v. *Wiley* (1976) 18 Cal.3d 162, 173 [133 Cal.Rptr. 135, 554 P.2d 881].)

■ In determining whether a murder was committed with the intent to torture, the jury may consider all the circumstances of the killing, including the severity of the wounds and the nature of assault or injury suffered. But such evidence alone is insufficient; there must be evidence of willful, deliberate and premeditated intent to cause the suffering. (*People* v. *Wiley, supra,* 18 Cal.3d 162, 168.)

■ In *People* v. *Daugherty* (1953) 40 Cal.2d 876 [256 P.2d 911], a first degree murder conviction on a torture/murder theory was affirmed against a husband who beat his wife to death in a manner similar to that here. Martinez attempts to distinguish *Daugherty,* arguing that the husband in *Daugherty,* after being kicked out of his house, returned three hours later, armed with a knife, severed the telephone line outside the house, forced his way in and then beat his wife to death. Martinez contends that this is a level of premeditation absent in the case before us, and that Martinez instead acted in an explosion of violence.

The premeditation in *Daugherty* was different from, not necessarily greater than, Martinez's. Martinez had threatened to punish Julie Ann R. for infidelity. When he suspected such infidelity, he ran home, entered through the bathroom window, and did exactly what he had threatened to do. His statements before and during the beating support the inference that he intended to inflict serious injury upon her for punishment or revenge. The evidence, taken as a whole, is sufficient to support the jury's view that Martinez committed a premeditated, intentional act of torture as punishment for Julie Ann R.'s infidelity, and that she died as a result of that torture.

. . . . . . . . . . . . . . . . . . .*

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1987.

---

* See footnote, *ante,* page 363.