Filed 12/24/24 P. v. Chester CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B330550 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA380962) |
| v. | |
| SAMUEL CHESTER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge. Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Samuel Chester appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6[1] (former § 1170.95),[2] following an evidentiary hearing (§ 1172.6, subd. (d)(3)).  Defendant contends that insufficient evidence supports the trial court's finding that he aided and abetted an attempted murder.  We affirm.

**BACKGROUND**

I.  *Facts*[3]

On October 15, 2010, defendant drove up to an apartment complex where Michael John Adame (Adame) lived.  Defendant's only passenger was a teenage girl.

At the time, Adame was drinking beer in the front yard, along with his nephew, Edward Martinez (Martinez), and a few others.  Martinez was a member of the East Side Clover gang, a rival of the Lincoln Heights gang.[4]

Defendant got out of his car, a white truck, and began fighting with Martinez.  Shortly thereafter, defendant said, "Lincoln Heights," and punched Martinez in the face three or four

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no substantive change. (Stats. 2022, ch. 58, § 10.)  For simplicity, we refer to the section by its new numbering.

[3]    These facts are taken from the preliminary hearing transcript, which was admitted into evidence at defendant's section 1172.6 evidentiary hearing.

[4]    On appeal, defendant confirms that he was a member of the Lincoln Heights gang.

2

times.  Defendant yelled, "'I'm Gunner from the Heights.  You'll see.  You'll get it[,]'" before getting back into the truck and driving away.

Adame returned to his apartment, and Martinez and the others congregated at the rear of the building. A few minutes later, defendant drove the white truck into the parking lot behind the apartment complex.  A fellow member of the Lincoln Heights gang, Martin Pacheco (Pacheco), got out of the passenger seat, ran towards the group, drew a gun from under his shirt, and began shooting.  Meanwhile, defendant drove down an adjacent alley.

Martinez tried to flee, but Pacheco pursued him.  Pacheco shot at Martinez four or five times, wounding him in the head, hand, and leg.

Adame heard the shooting from his apartment window, ran outside, and chased Pacheco down an alley.  Pacheco told Adame to stop and reached into his pocket.  Then he suddenly turned and sprinted off towards the white truck.

II.    *Plea and Sentencing*

In 2013, defendant pled no contest to one count of willful, deliberate, and premeditated attempted murder.  (§§ 664/187, subd. (a).)  As relevant here, he also admitted to the special allegation that the attempted murder was "committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members" (§ 186.22, subd. (b)(1)(C)).  Defendant stipulated that the arrest reports and preliminary hearing transcript formed the factual basis for his plea.

Pursuant to the terms of the plea agreement, the trial court sentenced defendant to 33 years in state prison.

III. *Section 1172.6 Proceedings*

A. First and Second Section 1172.6 Petitions

In February 2019, defendant filed a petition for resentencing pursuant to section 1172.6. The trial court summarily denied the petition on March 8, 2019.

Two years later, defendant filed a second petition, which was also summarily denied.[5]

B. Third Section 1172.6 Petition and Prima Facie Hearing

In March 2022, defendant, acting in propria persona, filed a pleading which he characterized as a writ of habeas corpus requesting resentencing. The trial court construed the filing as a petition for resentencing under section 1172.6 and appointed counsel.

Although it initially opposed the petition, the prosecution ultimately conceded that defendant had made a prima facie showing. The trial court issued an order to show cause and set the matter for an evidentiary hearing.

C. Evidentiary Hearing and Ruling

On May 16, 2023, the matter proceeded to an evidentiary hearing. The prosecution introduced the preliminary hearing transcript into evidence. Defendant submitted several minute orders from the 2013 plea proceedings, along with articles about the Los Angeles Police Department's policies on street gang data collection.

After entertaining argument from both parties, the trial court denied defendant's petition. Relying on the preliminary

---

[5] Defendant's first two petitions were denied primarily because, at the time, section 1172.6 resentencing relief was unavailable to those convicted of attempted murder.

4

hearing transcript, the court found that defendant had threatened Martinez, a gang member, on behalf of a rival gang. He then "came back within minutes with a fellow gang member who was armed with a firearm . . . and started shooting[.]"

Therefore, the trial court ruled that "[t]aken as a whole . . . there is sufficient circumstantial evidence to prove beyond a reasonable doubt that . . . [defendant] had the same intent that . . . Pacheco had[.]"

IV. *Appeal*

Defendant timely appealed from the order denying his third section 1172.6 petition.

## DISCUSSION

I. *Background Legal Principles*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) substantively amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting[] and limit[] the scope of the felony-murder rule. [Citations.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

The bill also added what is now section 1172.6 to provide "a procedural mechanism for defendants who could not be convicted of murder under the amended laws to seek retroactive relief. [Citations.]" (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.) Later amendments to section 1172.6 clarified that the statute also applies to persons convicted of attempted murder under the now-invalid natural and probable consequences doctrine. (*People v. Porter* (2022) 73 Cal.App.5th 644, 651.)

In order to obtain resentencing relief, a defendant who pled no contest to attempted murder must allege that (1) an information was filed against him allowing "the prosecution to

5

proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)(1)); (2) he "accepted a plea offer in lieu of a trial at which [he] could have been convicted of . . . attempted murder" (§ 1172.6, subd. (a)(2)); and (3) he could not now be convicted of attempted murder "because of changes to [s]ection 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)).

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subd. (c).)  At the evidentiary hearing, the parties may rely upon evidence in the record of conviction and/or new evidence to demonstrate whether the petitioner is eligible for resentencing.  (§ 1172.6, subd. (d)(3).)  The prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (§ 1172.6, subd. (d)(3).)

"If the superior court finds beyond a reasonable doubt that the petitioner is guilty of [attempted] murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).)

II.     *Standard of Review*

"In determining whether a trial court correctly denied a section 1172.6 petition following an evidentiary hearing, ""we review the factual findings for substantial evidence and the application of those facts to the statute de novo."" [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.)

Under the substantial evidence standard of review, we examine the entire record in the light most favorable to the judgment below (*People v. Becerrada* (2017) 2 Cal.5th 1009,

6

1028), "examin[ing] the record independently for "'substantial evidence—that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt" (*People v. Banks* (2015) 61 Cal.4th 788, 804 (*Banks*)).

III.    *The Trial Court Did Not Err*

Substantial evidence supports the trial court's finding that defendant was ineligible for resentencing relief because he aided and abetted Pacheco's attempt to murder Martinez.

A.    Applicable Law

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591, 602 (*Canizales*).)  A person aids and abets attempted murder if he encourages or assists the perpetrator, shares his intent to kill, and deliberately facilitates the attempted killing.  (*People v. Lee* (2003) 31 Cal.4th 613, 624.)  When determining the state of mind of the aider and abettor, the "existence of the requisite knowledge may be established by circumstantial evidence."  (*People v. White* (2014) 230 Cal.App.4th 305, 319; see also *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction"].)

Because a direct aider and abettor of attempted murder shares the criminal intent of the perpetrator, he can still be found "guilty . . . notwithstanding the amendments to sections 188 and 189," and is thus "ineligible for relief under section 1172.6." (*Vargas*, *supra*, 84 Cal.App.5th at p. 951; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 (*Offley*) [Sen. Bill No. 1437

7

"did not . . . alter the law regarding the criminal liability of direct aiders and abettors"].)

   B.   Analysis

   The record amply supports the trial court's implied finding that defendant aided and abetted Martinez's attempted murder.[6]

   Defendant initiated the fight that led to the attempted murder.  Upon seeing Martinez, a known affiliate of the East Side Clover gang, defendant confronted him.[7]  Defendant escalated the fight by announcing his allegiance to the rival Lincoln Heights gang, punching Martinez multiple times in the face, and threatening him, saying, "'I'm Gunner from the Heights. You'll see.  You'll get it.'"  Defendant's language indicates that he intended to kill Martinez.  (See *People v. Morales* (1992) 5 Cal.App.4th 917, 921, 926 [a defendant demonstrated his intent to kill by saying that he was "'going to go get'" the victim shortly before making an attempt on his life]; *People v. Evans* (1970) 8 Cal.App.3d 152, 157 [same, as to a defendant who told the victim "'I'm going to get you'" before killing him]; see also *People v. Towler* (1982) 31 Cal.3d 105, 110 [a defendant who repeatedly

---

[6]   While the trial court did not expressly find that defendant was an aider and abettor, it concluded that defendant facilitated the shooting and shared Pacheco's murderous intent.  As the parties do, we construe this determination as an implied finding that defendant aided and abetted attempted murder.

[7]   Defendant argues that after he punched Martinez, the latter claimed that he was not an active gang member.  Even assuming that Martinez was telling the truth, the record demonstrates that he was historically active in and associated with the East Side Clover gang.

said someone was "'going to get it'" was essentially saying that person would be killed].)

And this was not an empty threat. Minutes later, defendant returned with Pacheco, a fellow Lincoln Heights gang member armed with a gun. Although Pacheco was not present for defendant's fight with Martinez, he pursued Martinez as the latter attempted to flee. Tellingly, while Pacheco shot Martinez multiple times, he did not shoot Adame or any of the other people gathered behind the apartment complex. Pacheco's targeted attack suggests that defendant told him to go after Martinez to fulfill defendant's earlier threat on Martinez's life. (See *People v. Johnson* (2016) 62 Cal.4th 600, 630 [a "defendant's substantial participation in the events leading up to [the victim's] death[,]" creates an inference that the defendant "knew of the plan to kill [the victim], intended to facilitate that plan, and aided [the assailant] in committing the [attempted] killing"].)

Moreover, once Pacheco began shooting, defendant made no attempt to stop him. (*People v. Abelino* (2021) 62 Cal.App.5th 563, 578 [presence at the scene of the crime and failure to take steps to prevent a crime may be "considered together with other evidence in determining that a person is an aider and abettor"].) Instead, defendant fled the scene immediately after the shooting started. (See *People v. Garcia* (2008) 168 Cal.App.4th 261, 274 ["a defendant's conduct after a crime, including flight, is a relevant factor in determining his liability for aiding and abetting"].)

Under these circumstances, substantial evidence supports the implied finding that defendant directly aided and abetted the attempted murder. The trial court correctly determined that defendant is ineligible for resentencing relief under section

1172.6. (*Vargas, supra,* 84 Cal.App.5th at p. 951; *Offley, supra,* 48 Cal.App.5th at pp. 595–596.)

C.     Defendant's Counterarguments

Defendant raises what boils down to three arguments against our conclusion.

First, defendant contends that the trial court's "finding that [defendant] intended to kill" improperly "rests on conjecture and assumptions about gang members and gangs generally[] [rather than] the facts of this case." Defendant argues that "[t]here are simply no statements or acts by [defendant] that show [he] had a homicidal purpose when he dropped Pacheco off[,]" and because of that, any conclusion to the contrary "could only rest . . . on [defendant's] gang affiliation and an assumption that gang members always want to kill each other."

Not so. Defendant's intent to kill can be inferred from his own conduct before and after the attempted murder—namely, threatening Martinez, retrieving and directing Pacheco, and fleeing rather than attempting to restrain Pacheco or aid Martinez once the shooting started. The participants' gang affiliations merely strengthen those inferences and show defendant's motive for targeting Martinez. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 [when evaluating evidentiary support for an aiding and abetting charge, evidence of gang rivalries can be used to strengthen other inferences supporting the defendant's conviction]; *People v. Smith* (2005) 37 Cal.4th 733, 740–741 [evidence of motive is often probative of intent to kill].)

Defendant cites *Banks, supra,* 61 Cal.4th 788, in support of his proposition that "being a gang member and committing a 'gang-related' crime does not support an inference th[at]

10

defendant was willing to kill or assist a killing, in the absence of evidence that the particular defendant[] 'had [himself] previously committed murder, attempted murder, or any violent crime.'" Without such evidence, defendant contends that the prosecution could not show that he knew Pacheco was armed or intended to kill Martinez.

*Banks* is inapposite. The *Banks* court considered whether, under California's now-invalid felony murder law, a getaway driver was subject to life imprisonment without the possibility of parole as a major participant in an attempted robbery that resulted in murder. (*Banks*, *supra*, 61 Cal.4th at pp. 794, 803.) The court concluded that the driver's role in the crime was minimal because "[t]here was no evidence" that he "could have seen or heard the shooting, or that he had any immediate role in instigating it or could have prevented it[,]" and thus he had no "reason to know [that] it was going to happen, and could not do anything to stop the shooting or render assistance." (*Banks*, *supra*, at pp. 805, 807.) Under those circumstances, the court reasoned that one of the only ways the defendant could have been "'"*subjectively* aware that his . . . participation in the felony involved a grave risk of death"'" would be if he, "his confederates[,]" or "any member of their [gang]" "had ever participated in shootings, murder, or attempted murder[.]" (*Id.* at pp. 807, 811 [italics in original].)

Conversely, defendant did instigate the shooting in this case by threatening Martinez's life. He was also present when Pacheco drew the gun and began firing at Martinez, and could have tried to restrain Pacheco or render aid. Thus, regardless of defendant or Pacheco's criminal history, there was plenty of evidence that defendant was aware Pacheco would use lethal

11

force on Martinez.[8] (See *People v. Nguyen* (1993) 21 Cal.App.4th 518, 531–532 ["[I]t is not necessary that the primary actor expressly communicate his criminal purpose to the defendant[,] since that purpose may be apparent from the circumstances"].)

Second, defendant points to evidence that contradicts the trial court's factual findings. But under our substantial evidence standard of review, we must "accept all evidence supporting the judgment, disregard contrary evidence, and draw reasonable inferences in favor of the verdict." (*People v. Aguilar* (2019) 41 Cal.App.5th 1023, 1026; see also *People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 329 ["The test 'is simply whether there is substantial evidence in favor of the respondent. If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.' [Citation.]"].)

Lastly, defendant attempts to fault the prosecution for failing to produce new evidence supporting the conviction. To be sure, at a section 1172.6 evidentiary hearing, either party "may . . . offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).) But defendant cites no authority *requiring* the prosecution to do so where, as here, the existing record contains ample evidence of defendant's guilt. (See

---

[8] We are not persuaded by defendant's argument that he intended for Pacheco to hurt Martinez, but not kill him. Had defendant merely wanted someone to injure Martinez with their bare hands, he would have had no need to fetch Pacheco; defendant himself had already punched Martinez in the face multiple times. This supports an inference that defendant knew Pacheco was armed with some sort of weapon and would follow through on defendant's earlier threat to have Martinez killed.

12

*People v. Hovarter* (2008) 44 Cal.4th 983, 1029 [if no authority "is furnished on a particular point, the [appellate] court may treat it as waived[] and pass it without consideration"].)

### DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
RICHARDSON