[Crim. No. 21509. Second Dist., Div. One. Aug. 30, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
REGIS JEREMIAH GOLDBACH, Defendant and Appellant.

## COUNSEL

Stuart D. Meyers, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Howard J. Schwab and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal from a judgment of conviction of one count of first degree murder in violation of Penal Code section 187, and one count of assault with a deadly weapon with intent to commit murder in violation of Penal Code section 217. We affirm the judgment.

Appellant had been married to Anna Goldbach for about 15 years. Near Christmas in 1970, appellant threatened to kill his wife. On February 25, 1971, Mrs. Goldbach filed for dissolution of her marriage. She obtained an interlocutory decree on May 14, 1971. Shortly afterward, appellant told her that she would never live "to see the divorce final."

After leaving appellant, Mrs. Goldbach went to live with her sister and brother-in-law, Alberta and Edwin J. Mohr. On June 6, 1971, appellant telephoned Edwin Mohr and asked Mohr if he knew "how big a hole a .45 caliber pistol makes." Appellant abruptly hung up but called back shortly afterward and said, "You three have—you have three days to live." On June 7, appellant, after calling upon three different persons in an effort to acquire a "cheap" .22 or .38 caliber pistol without waiting the normal five-day period required to consummate the legal paper work incident to the purchase, bought a .38 caliber revolver and a box of wad-cutter ammunition from Albert J. Landsgaard.

At about 8 a.m. on June 8, appellant called Mrs. Goldbach at her sister's house telling her that he had a document for her to sign. Appellant had been drinking but did not show the effects of the liquor. He arrived at the Mohr home by taxi, telling the driver along the way, "Don't drink and have trouble with your in-laws." Appellant entered the house and was offered a cup of coffee. He produced a paper for Mrs. Goldbach to sign. When she asked where she should sign it, appellant said that his real purpose in coming was not to obtain the signature. He produced the .38 caliber pistol. Mrs. Mohr ran to the kitchen and took the receiver off a wall telephone. Appellant fired a shot at her which missed its target. Mrs. Mohr ran from the house. Appellant fired a shot at Mrs. Goldbach, hitting her in the hip. After the shot, Mrs. Mohr ran back into the house, confronted appellant, and struck him with a bunch of ornamental grapes. Mrs. Goldbach told her sister not to fight with appellant because he had a gun. Mrs. Mohr fled to a bedroom where appellant shot her twice. He shot Mrs. Goldbach again in the chest.

Appellant was apprehended in his house trailer. After having been given a *Miranda* warning, he told the police where he had discarded the weapon. While riding in the police car and while not being questioned, he volunteered that he knew he had done something wrong. Mrs. Goldbach recovered from her wounds but Mrs. Mohr died.

Appellant was charged with the murder of Mrs. Mohr and with assault to commit murder upon Mrs. Goldbach. In a jury trial, his defense was diminished capacity and that the gun had discharged accidentally in a struggle with Mrs. Mohr. Appellant was convicted of the offenses charged. The jury found the murder to be in the first degree.

On this appeal, appellant contends: (1) He was denied equal protection of the law by the testimony of psychiatrists appointed by the trial court pursuant to Evidence Code section 1017; (2) he was denied effective representation at trial because his counsel failed to raise the defense of not

guilty by reason of insanity; (3) the trial court prejudicially erred in refusing an instruction defining "premeditation and reflection"; (4) the trial court erred in receiving evidence of "specific acts of misconduct"; (5) the trial court erred in permitting the jury to examine a copy of a form of mental test administered to appellant; (6) evidence in the form of the murder weapon, ammunition, and appellant's admissions is the tainted product of a search violating Penal Code section 844, the rule of *Chimel* v. *California,* and questioning contrary to the *Miranda* rule. The contentions lack merit.

### Evidence Code Section 1017

Pursuant to Evidence Code sections 730 and 1017, the trial court appointed Drs. Crahan, Tweed, and Markman to examine appellant, and Dr. Davis to perform an electroencephalogram and an alcohol induced electroencephalogram. The minute orders recording the appointments do not recite whether they were made at the request of the defense or on the trial court's own motion. There is no reporter's transcript of the proceedings leading to the appointments. Dr. Crahan testified for the defense, stating that, in his opinion, while appellant's mental capacity was impaired by Korsakoff syndrome resulting from chronic alcoholism, "he was able to deliberate, premeditate, and harbor malice." The tenor of Dr. Crahan's testimony is that appellant does not suffer from diminished capacity in the legal sense but that appellant did not think "out well the consequences and all that went with this offense." Drs. Tweed and Markman were called in rebuttal by the prosecution. Dr. Tweed expressed his opinion that appellant "possessed the mental capacity to form the specific intent and to commit the offense alleged, that he had the mental capacity to deliberate, premeditate and to harbor malice, and that he had the mental capacity to meaningfully and maturely reflect upon the gravity of the contemplated acts." He found no evidence of Korsakoff syndrome. Dr. Markman also testified that he found no indication of diminished capacity.

Appellant contends that the appointment of psychiatrists, pursuant to Evidence Code section 1017, and their subsequent testimony denied him equal protection of the law. He argues that the appointments were made because he was indigent and unable privately to retain experts, thus exposing him to unfavorable testimony by operation of Evidence Code section 1016. Conversely, argues appellant, he could not have been compelled to disclose the identity of privately retained psychiatrists not called by him to testify and thus would not have faced the potential disclosure of unfavorable testimony had he not been indigent. The law does not support the contention.

Evidence Code section 1017 states: "There is no [psychotherapist-patient] privilege under this article if the psychotherapist is appointed by order of the court to examine the patient, but this exception does not apply where the psychotherapist is appointed by order of the court upon the request of the lawyer for the defendant in a criminal proceeding in order to provide the lawyer with information needed so that he may advise the defendant whether to enter or withdraw a plea based on insanity or to present a defense based on his mental or emotional condition."

While Evidence Code section 1016 states: "There is no [psychotherapist-patient] privilege . . . as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by: (a) The patient; . . .," it does not require disclosure of communications to a psychiatrist appointed pursuant to section 1017 who acts purely as a consultant to defense counsel and who is not called as a witness. Those communications are protected by the attorney-client privilege codified in Evidence Code section 954. That privilege extends to communications between the lawyer and client which are disclosed to third persons who are present to further the interest of the client or to whom disclosure is reasonably necessary for transmission of the information to the lawyer. (Evid. Code, § 952.) Accordingly, it covers communication made to "a physician or similar expert—for the purpose of transmitting such information to the lawyer. . . ." (Law Revision Commission comment on Evid. Code, § 952; *City & County of S. F.* v. *Superior Court*, 37 Cal.2d 227, 234-235 [231 P.2d 26].) Sections 1016 and 1017 thus preserve to the indigent defendant the same right to confidentiality of the psychiatric expert consultant that is available to a defendant employing a privately retained psychiatrist not called by him as a witness. His lawyer need merely request the appointment for consultation purposes. Since the indigent defendant has essentially the same right as an affluent one, the denial of equal protection of the law asserted by appellant does not exist.[1]

---

[1] Appellant's brief does not contend that the trial court erroneously received the testimony of Drs. Tweed and Markman. An objection to their testimony was tendered at trial on the basis that the two psychiatrists were consultants to the defense whose testimony was precluded by the latter portion of Evidence Code section 1017. The privilege retained by that portion of section 1017 applies, however, only where the psychotherapist is appointed by the court at the request of the defense in a criminal case. The clerk's transcript is silent on at whose motion Drs. Tweed and Markman were appointed. There is no reporter's transcript of the proceedings of appointment. While there is an indication in the record of the trial itself that Dr. Markman was under the impression that he was appointed as a consultant at appellant's request, we cannot, on this appeal, assume that appellate counsel failed to investigate the nature of the appointments and to take appropriate action to correct the clerk's transcript if in fact the psychiatrists were appointed at the request of the defense.

## Adequacy of Representation at Trial

Appellant contends that his trial counsel denied him adequate representation by failing to raise the issue of not guilty by reason of insanity. There is, however, not the slightest showing that there is any factual support for such a theory. To the contrary, all psychiatrists who examined appellant testified at trial and expressed the opinion he was legally sane. Appellant's contention must be treated as frivolous.

## Instruction on Premeditation and Reflection

■ The trial court instructed the jury on deliberate and premeditated murder in the terms of CALJIC No. 8.20. It defined the terms as follows: "The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand. . . . To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill." It also instructed on diminished capacity to premeditate or deliberate in terms of CALJIC No. 8.77. The trial court refused an instruction tendered by appellant as follows: "Premeditation and deliberation require a willful and meaningful reflection on the nature and gravity of the contemplated act and the true test is the extent of reflection. It also requires a finding that the defendant has the ability to comprehend more than the mere understanding of the character of the act and the thought necessary to commit it. Defendant must have the ability to reflect on and comprehend the consequences of the act." Citing *People v. Wolff,* 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], and *People v. Goedecke,* 65 Cal.2d 850 [56 Cal.Rptr. 625, 423 P.2d 777, 22 A.L.R.3d 1213], appellant contends that the trial court erred in refusing the instruction. It did not. While the instruction tendered by appellant correctly states the law, its substance is included in the instructions given by the trial court. (See *In re Kemp,* 1 Cal.3d 190, 194-195 [81 Cal.Rptr. 609, 460 P.2d 481].)

## Evidence of Prior Acts

■ Appellant contends that the trial court prejudicially erred in receiving evidence of appellant's threats to kill his wife and against her sister

---

We note also that the testimony of the two physicians called in rebuttal is essentially duplicative of the testimony of Dr. Crahan adduced by the defense. Hence an error in the denial of a privilege to the opinions of Drs. Tweed and Markman was non-prejudicial beyond a reasonable doubt. (*People v. Watson,* 46 Cal.2d 818 [299 P.2d 243].)

and brother-in-law, commencing in late December of 1970 and continuing until two days before the murder on June 8, 1971. The evidence was properly admitted. Evidence Code section 1101 states: "(a) Except as provided in this section . . . evidence of a person's character or a trait of his character (whether in the form of an opinion . . . or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion. (b) Nothing in this section prohibits the admission of evidence that a person committed a crime . . . or other act when relevant to prove some fact (such as motive . . . [or] intent . . .) other than his disposition to commit such acts." Here the evidence of the threats established premeditation and deliberation, elements of the crime of first degree murder rather than a predisposition to commit the crime.

## Copy of Mental Test

■ A psychologist called as a witness by appellant had administered a test to him calling for answers to a series of questions. In order to permit the jury to follow cross-examination of the psychologist, the trial court permitted copies of the test without answers to be viewed by the jury. Appellant claims error in the process. If there was error, it was not prejudicial. Nothing in the document detracts from appellant's defense. The psychologist who was cross-examined with respect to the test had not testified in a manner that was particularly helpful to appellant.

## Search and Appellant's Statements

When the arresting officers arrived at appellant's house trailer, they heard sounds indicating that he was engaged in a telephone conversation. They identified themselves as police officers and demanded that he come out from the trailer. They repeated the demand but did not state their purpose was to arrest appellant for the shootings. When appellant did not exit, the officers entered with drawn guns through a door of the trailer. They arrested and handcuffed appellant and seated him on a couch. In a subsequent search, they discovered a box of .38 caliber wad-cutter ammunition beneath the couch about 6 inches from where appellant's foot had been. Appellant was told of his right to remain silent and to an attorney during questioning. He was informed that if he could not afford an attorney, one would be provided. He was questioned regarding the location of the gun and told the officers he had thrown it behind the wall of a cemetery. While in the police car, appellant, without being interrogated, volunteered that he knew he "had done wrong."

■ Appellant contends that the procedure of arrest violated the knock

and notice requirements of Penal Code section 844. "Noncompliance with section 844 may . . . be excused when the officer acts on a reasonable and good faith belief that compliance would increase his peril. . . . Such a belief . . . must be based on the facts of the particular case." (*People v. Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489].) Here, the arresting officers were aware that minutes before they arrived to arrest appellant, he had shot two people. They had every reason to believe that he was armed and that self-protection required that they not comply strictly with Penal Code section 844.

Appellant also argues that the search which disclosed the box of ammunition was illegal in scope within the rule of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. The search, being of an area into which appellant might have reached, does not appear to have violated the rule of *Chimel.* We do not reach that issue, however, because if there was error in permitting evidence of the box of ammunition, that error was not prejudicial beyond a reasonable doubt. Appellant's conviction rests on eyewitness testimony, not upon circumstantial evidence. If evidence of his possession of the ammunition contributed to his conviction, that evidence was before the jury in the form of testimony of the seller of the ammunition to appellant. The discovery of the box of ammunition itself added nothing to the prosecution's case.

Finally, appellant contends that the trial court improperly received evidence of his statements because they are the product of an arrest illegal for noncompliance with Penal Code section 844 and made without a proper *Miranda* warning. He argues that there was no express statement that an attorney would be provided for him "free of charge." The contention fails on the record here. Compliance with section 844 was excused. No objection to evidence of appellant's statements was made upon the *Miranda* ground in the trial court and hence the issue is not available on appeal.

*Disposition*

The judgment is affirmed.

Wood, P. J., and Clark, J., concurred.

A petition for a rehearing was denied September 20, 1972, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1972.