Filed 10/4/13  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055813 |
| v. | (Super.Ct.No. FBA800784) |
| ARTURO HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Victor R. Stull, Judge.  Affirmed.

Michael Bacall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

When defendant Arturo Hernandez was 20 years old, he killed his grandmother

1

who had raised him. A jury convicted him of first degree murder. The court sentenced him to prison for 55 years to life. On appeal, defendant challenges the elements of premeditation and deliberation. Defendant seeks either a reversal of his conviction or a reduction to second degree murder and a sentence of 30 years to life. We reject defendant's arguments and affirm the judgment.

II

STATEMENT OF FACTS

At the time of her death, defendant's grandmother, Luisa Ventura, and defendant were living in a mobile home park in Pomona with her daughter and defendant's mother, Ruth, and her husband and other children. Another of Ventura's daughters, Janet, also lived in the mobile home park. Ventura and Janet commuted to work together.

In October 2007, Jorge Hernandez, Ventura's son-in-law, received a telephone message from defendant in which he threatened to kill Jorge's daughter and Ventura if Jorge did not pay defendant $5,000. Defendant claimed the message was a joke.

About a week before Ventura disappeared, Janet and Ventura were at Ruth's residence when defendant told Janet that Ventura "was not going to suffer anymore." At the time, Janet thought defendant was referring to the crowded living situation. Later, Janet came to believe defendant's statement had meant he was planning to hurt Ventura.

On Saturday, November 15, 2008, the family traveled to Las Vegas for an overnight visit with Ventura's son, Carlos, his wife, and their newborn twins. Ventura and defendant drove in a Toyota Tacoma. Janet and others drove separately. They all planned to return Sunday, November 16, 2008, for work on Monday, November 17,

2

2008.

On Saturday night part of the group went to the casino but defendant, Ventura, and Carlos and his wife stayed home with the infant twins. Carlos thought defendant and Ventura were getting along well.

On Sunday, November 16, 2008, Ventura and defendant left Carlos's residence early to go to the Las Vegas swap meet. About 2:00 p.m., Janet and the others left Las Vegas to return to Pomona.

Defendant and Ventura returned to Carlos's residence around 4:00 p.m. Sunday. At 5:00 p.m. on Sunday, Janet spoke to Ventura on the phone in Las Vegas. Ventura drove the Toyota Tacoma when they left Las Vegas. Ventura's face was not swollen and her nose was not injured. Defendant wore a blue T-shirt and jeans.

Monday morning, November 17, 2008, Ventura did not pick Janet up for work.

On the afternoon of November 20, 2008, the Barstow police impounded defendant's gray Tacoma truck from the parking lot of the Barstow Mall, located near the Barstow Station McDonald's, less than a mile away. There were bloodstains in the truck. A purple sheet in the bed of the truck matched a piece of purple sheet found with the victim's body.

On the dashboard was a paper hand distributed by McDonald's for a $1 donation.[1] Defendant's fingerprints were on the paper hand. A McDonald's receipt and an uneaten McDonald's hamburger were also found in the cab of the truck. The receipt was dated

---

[1] In November, McDonald's conducted a fundraiser, giving a donor a paper hand in exchange for a donation.

3

Monday, November 17, 2008, and the time was 5:20 p.m.

Surveillance tapes from the cameras at the Barstow Station McDonald's for November 17, 2008, at 5:19 p.m., were played for the jury. The footage of the drive-thru windows depicted two people in the Tacoma.

Several pieces of clothing were also found in the truck: some shirts and pants; a blue AAA brand T-shirt, size 3XL, with red marks on the right sleeve and the chest area; and a pair of Roca Wear jeans, also with red marks on the crotch and left leg. The red stains tested presumptively positive for blood. Other items in the truck were a pillow, a Motorola Boost cell phone, a Las Vegas swap meet payment envelope, and a Jack-in-the-Box receipt for November 17, 2008, at 1:42 p.m. Many of Ventura's personal items, including her medicine, cell phone, and new underwear, were in the truck. A brown purse contained Ventura's driver's license, debit card, and Visa card.

On November 25, 2008, sheriff's deputies found Ventura's body behind some bushes in the desert near Cima Road, about .3 miles from Interstate 15. The pathologist estimated death may have occurred two to four days before.

Tire impressions indicated that a vehicle had been driven to the scene and stopped. Shoe impressions and drag marks led from where the passenger door of the vehicle would have been located to the body of the victim. The body had been dragged out of the car by the armpits.

Tire impressions at the scene were similar to defendant's truck tires. The blood on the stained AAA T-shirt and jeans matched Ventura's blood. Defendant's DNA was found on the T-shirt.

4

On November 27, 2008, defendant was arrested wearing the checkered FTE brand tennis shoes that matched the size and tread design of the shoe prints at the crime scene. Defendant had red marks on his shoulder and scratches on his arm. He had sand in his rear pockets.

The autopsy showed external injuries on Ventura's nose and upper lip and under her left eye and bruising on her face. There were no indications of a natural cause of death. The pathologist classified the death as a homicide based on the location of the body and the trauma to the victim's face. The condition of the body was consistent with smothering as the cause of death. Death by smothering takes several minutes with persistent force applied to block the nose and mouth of the victim.

The defense questioned Detective Robert Warrick about the investigation of the case. Defendant's theory was that Ventura was killed by another person and someone tampered with the evidence against defendant.

III

EVIDENCE OF PREVIOUS THREAT

Defendant contends the threat defendant made to Jorge to pay $5,000 or defendant would kill Ventura or Jorge's daughter was inadmissible character evidence. (Evid. Code, § 352.) Defendant further argues the threat was the only evidence supporting a finding of premeditation and deliberation and the first degree murder conviction must be reduced to second degree murder. The People respond the admission of the threat was not an abuse of discretion because it was relevant to defendant's intent and motive and state of mind.

5

*A. Proceedings Below*

Before trial, the prosecutor argued evidence of the threat to Jorge was admissible under Evidence Code section 1101, subdivision (b), to show that defendant's motive, plan, and intent in killing his grandmother was to obtain money. The prosecutor also argued that the threat—made in October 2007 about a year before the murder—was not too remote in time. The court found the evidence was relevant to motive and intent and therefore admissible.

*B. Admissibility*

Trial court rulings on the admissibility of evidence under both Evidence Code sections 1101, subdivision (b), and 352 are reviewed for an abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1130.) A trial court's exercise of discretion must be upheld absent a clear showing of abuse, in that the prejudicial effect of the evidence clearly outweighs its probative value. (*People v. Karis* (1988) 46 Cal.3d 612, 637.)

The *Karis* court recognized that, "'A defendant's threat against the victim . . . is relevant to prove intent in a prosecution for murder.'" The court held that a prior statement by the defendant that he would kill a rape victim was admissible to prove the defendant's intent where other evidence showed the victim was within the scope of the threat. (*People v. Karis, supra*, 46 Cal.3d at pp. 636-637.) The court held that statements of intent of this nature were admissible "unless the circumstances in which the statements were made, the lapse of time, or other evidence suggests that the state of mind was transitory and no longer existed at the time of the charged offense." (*Id.* at p. 637.) The court found that a threat of this nature had great probative value and was prejudicial—not

6

because it tended to show propensity to kill—but because of its value in identifying the defendant as the murderer and in proving his motive and mental state. (*Id.* at pp. 637-638.) A threat is also admissible to show premeditation and deliberation in a murder case rather than showing a predisposition to commit the crime. (*People v. Goldbach* (1972) 27 Cal.App.3d 563, 569-570.)

Other cases have held that the issue of remoteness pertains to the weight of the evidence, not its admissibility. In *People v. Granados* (1957) 49 Cal.2d 490, the murder victim's mother was allowed to testify that three years before the murder she confronted the defendant who said that he would kill the mother and her two children: "Such [prior threat] evidence was also admissible on the ground that it tended to establish prior threats of defendant toward decedent and was competent to show motive and the state of mind of defendant. The objection to the remoteness of such evidence goes to its weight rather than to its admissibility." (*Id.* at pp. 494-495.)

In *People v. Dement* (1957) 48 Cal.2d 600, threats made by the defendant before the murder were admissible notwithstanding the remoteness because the threats demonstrated malice: "'[R]emoteness of time, where the party has made declarations pointing to a guilty intention, cannot render the evidence incompetent. For years may roll over a felon's head while he is arranging his schemes or while the guilty thought conceived in his mind is ripening into the deliberate purpose with which crime is committed.'" (*Id.* at p. 605.)

In this case, defendant's threat showed motive and intent to kill his grandmother for financial gain. The evidence also showed deliberation and premeditation. The

7

remoteness of the threat affected its weight, not its admissibility.  (*People v. Granados,*

*supra*, 49 Cal.2d at pp. 494-495; *People v. Dement, supra*, 48 Cal.2d at p. 605.)  The trial

court did not abuse its discretion in allowing evidence that defendant threatened to kill his

grandmother if Jorge did not pay defendant $5,000.

*C.  Harmless Error*

Any error in admitting the threat was also harmless because it is not reasonably

probable that a result more favorable to defendant would have been reached absent the

alleged error.  (*People v. Thomas* (2011) 52 Cal.4th 336, 356; *People v. Watson* (1956)

46 Cal.2d 818.)

Defense counsel argued to the jury that the threat was taken as a joke by Jorge and

not treated seriously.  The trial court instructed the jury based on CALCRIM No. 375 that

the threat was admitted for limited purposes and could only be used if the jury first found

defendant had made the threat.[2]  Finally, as we discuss in greater depth below, the

evidence of premeditation and deliberation was strong even without the threat.

---

[2] "The People presented evidence of other behavior by the defendant that was not charged in this case, that the defendant attempted to extort money from Jorge Hernandez.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged act. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged act, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

"The defendant was the person who committed the alleged offense in this case; or

"The defendant acted with the intent to Murder Luisa Ventura in this case; or

"The defendant had a motive to commit the offense alleged in this case[.]

*[footnote continued on next page]*

Defendant was with the victim before she died.  Defendant's bloody clothing and the matching shoe prints established that defendant killed the victim.  The manner in which defendant killed the victim showed premeditation and deliberation.  Based on the victim's facial injuries, the pathologist concluded that the cause of death was homicide by smothering—requiring several minutes to deprive the victim of oxygen by forcefully blocking her nose and mouth.  As argued by the prosecutor, the jury could have concluded from the manner of death that defendant acted deliberately and with premeditation because the force and time it took to kill the victim allowed defendant to weigh his acts and decide to proceed with the killing.  Additionally, by driving to a secluded location in the desert and dragging the body behind bushes to conceal it, defendant evinced a plan for killing.  Furthermore, Janet's testimony that, a week before the killing, defendant told her that the victim "was not going to suffer anymore," showed deliberation and premeditation.  For these reasons, it is not reasonably probable defendant would have obtained a more favorable result if the threat to Jorge had been excluded.

IV

SUFFICIENCY OF EVIDENCE OF DELIBERATION AND PREMEDITATION

Defendant protests that, with or without the threat to Jorge, the evidence was

---

*[footnote continued from previous page]*
"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged act, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of murder.  The People must still prove the charge beyond a reasonable doubt."

insufficient to support the jury's finding of deliberation and premeditation based on planning, motive, or the manner of killing. Defendant seeks to reduce his conviction from first degree to second degree murder.

We review the record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence, including circumstantial evidence, which is reasonable, credible, and of solid value—from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt. (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.) As we have already mentioned above, defendant's threat to Jorge and statement to Janet about the victim demonstrated planning and motive. The circumstances and manner of the killing constituted a deliberate and premeditated murder.

The jury was instructed on first degree murder based on CALCRIM 521.[3] "An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Stitely*

_____

[3] "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death.

"The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time."

(2005) 35 Cal.4th 514, 543, citing *People v. Perez* (1992) 2 Cal.4th 1117, 1125.) However, the reflection necessary to establish premeditation and deliberation need not take an extended period of time: "Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." (*People v. Bolin* (1998) 18 Cal.4th 297, 332.)

In *People v. Anderson* (1968) 70 Cal.2d 15, the court identified three categories of evidence pertinent to determining premeditation and deliberation: (1) facts about a defendant's behavior before the killing that show planning; (2) facts about any relationship between the defendant and the victim suggesting a motive; and (3) facts about the manner of the killing that show the defendant intentionally killed the victim according to a preconceived plan. (*Id.* at pp. 26-27.) "*Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse." (*People v. Pride* (1992) 3 Cal.4th 195, 247, citing *People v. Perez, supra*, 2 Cal.4th at p. 1125.)

In *People v. Hovarter* (2008) 44 Cal.4th 983, the court found the evidence allowed the jury to infer the defendant had a plan to prey sexually on defenseless young women and that the evidence that he dumped a body off a bridge and into a river indicated the killing was motivated by his desire to avoid detection for the crimes he committed. Hovarter's choice to commit crimes in an isolated or secluded location suggested "a premeditated plan designed to avoid detection." (*Id.* at p. 1019.) The court emphasized

11

that the manner of killing—strangulation lasting five to eight minutes—demonstrated deliberation by the defendant. The court found that this "prolonged manner" of killing the victim afforded ample time for the defendant to consider the nature of his act: "'A rational finder of fact could infer that [this manner of killing] demonstrated a deliberate plan to kill her." (*Id.* at p. 1020, citing *People v. Davis* (1995) 10 Cal.4th 463, 510.) Other strangulations have been held to supply evidence sufficient to allow the jury to infer the killing was premeditated and deliberate. (*People v. Bonillas* (1989) 48 Cal.3d 757, 792-793; *People v. Stitely, supra,* 35 Cal.4th at p. 544.)

In this case, defendant told Janet just a week before the murder that his grandmother "was not going to suffer anymore." Defendant planned to commit murder after he and the victim had left Las Vegas and they were in a secluded desert location. Defendant's motive to extort money was apparent in his threat to Jorge. There was no money in the victim's purse, which was found in the truck, suggesting defendant killed her and took her money. Finally, the manner of killing by suffocation strongly supported a finding of premeditation and deliberation.

In *People v. Rowland* (1982) 134 Cal.App.3d 1, the court found little evidence of planning to support a finding of premeditation and deliberation after defendant strangled a woman he met in a bar. In *Rowland*, there was no prior relationship between the defendant and the victim and no prior threats to kill the victim. The circumstances supported a conclusion that the defendant spontaneously killed the victim during a sexual

12

liaison. The court concluded there was no evidence of motive because the defendant did not know the victim before the night he killed her and the killing was a spontaneous reaction. Although the manner of killing by strangulation showed a deliberate intent to kill, it failed to prove a "preconceived design." (*Id.* at pp. 8-9.)

In contrast, the circumstances in this case are much different. Defendant had a long standing relationship with his grandmother who was a surrogate parent. He had made two prior statements indicating a plan or motive to kill her. Reviewing the evidence in the light most favorable to the verdict, the jury could have inferred that defendant had planned to kill his grandmother before the trip to Las Vegas and then waited to smother her until she was alone with him and isolated. Finally, the victim's death by smothering strongly supports the jury's finding of premeditation and deliberation.

The other two cases cited by defendant—*People v. Duff* (2010) 50 Cal.4th 787, 792 [father smothered a one-month-old child] and *People v. Stuart* (2007) 156 Cal.App.4th 165, 170 [daughter smothered her ailing elderly mother]—involved sentencing issues and did not consider the issue of premeditation and deliberation.

V

DISPOSITION

Sufficient evidence of premeditation and deliberation supported defendant's

13

conviction for first degree murder.  We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


HOLLENHORST

Acting P. J.


KING

J.

14